ALICE M. DICKSON *et al.*

*v.*

THE NEW YORK BISCUIT COMPANY *et al.*

*Opinion filed October 24, 1904.*

1. TRUSTS—*when trustees have power to sell real estate.* Trustees have power to sell real estate under a provision of a will giving them "all requisite authority and power, including that of alienation, necessary or convenient for the management of said estate and the division and distribution thereof as herein contemplated."

2. SAME—*express power of sale can be restricted only by explicit language.* A power to sell real estate, clearly conferred upon trustees by the language of a will, can be restricted only by subsequent language of the will which is explicit in its terms.

3. SAME—*what does not restrict the power of sale to personalty.* A power conferred upon trustees by will to sell real estate is not restricted to sale of personal property by a subsequent clause providing that "the conditions of the above trust shall apply to the personal property devised to the trustees," the effect of such clause being to extend the trust to personal property as well as real estate.

4. SAME—*what words render certain a doubtful power of sale.* The words, "I direct said trustees to convey such portion as remains in their hands," referring to a certain distribution of the trust estate, consisting of both real and personal property, upon the happening of a particular event, render certain a doubtful power of sale conferred by former provisions of the will. (*Thompson v. Adams,* 205 Ill. 552, distinguished.)

5. SAME—*right of trustees under will to make advances.* Where a will expressly provides that the trustees may "make advances, from time to time, to said children, in such manner and to such extent as they shall deem wise and prudent," the trustees may exercise such power, in their discretion, notwithstanding the children are minors living with their father, until whose death no portion of the estate is to vest in the children.

6. SAME—*court will not interfere with discretionary power except for fraud.* Where powers conferred by will upon trustees with reference to the sale of real estate are discretionary, courts will not interfere either before or after a sale, except in cases of actual fraud and collusion.

7. SAME—*purchaser's rights where trustees' power of sale is discretionary.* Where the power of trustees, under a will, to sell real estate is discretionary, the purchaser is not bound to make inquiry as to whether the trustees have properly exercised their powers nor to look to the application of the purchase money by the trustees.

8. SAME—*beneficiaries cannot disaffirm sale and retain purchase money.* Beneficiaries under a trust who receive and accept the purchase price, or a part thereof, for which the trust property was sold by the trustee without fraud or collusion, cannot, even though they are minors, retain such purchase money and also seek to compel a re-conveyance of the property upon the ground the purchaser knew the trustee had no power to sell.

9. PLEADING—*estoppel in pais need not be specially pleaded.* Evidence tending to establish an estoppel *in pais* may be given under an allegation of the answer that the "complainants have by their acts and conduct ratified and approved of the sales" sought by the bill to be overthrown.

APPEAL from the Circuit Court of Cook county; the Hon. F. A. SMITH, Judge, presiding.

This is a bill, filed in the circuit court of Cook county on June 12, 1902, by the appellants, children of Marietta C. Strong, deceased, and grandchildren of Philo Carpenter, praying that a certain deed, executed by Theodore F. Bliss and Phineas L. Hanscom, as trustees under the will of Philo Carpenter, deceased, on September 18, 1890, and recorded October 27, 1890, to William Coffeen; and a deed, dated September 18, 1890, and two deeds, dated respectively September 20, 1890, and November 5, 1890, by the same trustees to said Coffeen; and a deed, dated and recorded on October 28, 1890, executed by William Coffeen to the New York Biscuit Company; and a mortgage deed, dated March 1, 1891, and recorded on April 25, 1891, executed by the New York Biscuit Company to the Central Trust Company, a New York corporation, as trustee, to secure the New York Biscuit Company's 1500 bonds of even date with the said mortgage for $1000.00 each, payable on March 1, 1911, with interest at six per cent, etc.; and a deed, dated January 29, 1898, and recorded November 20, 1902, executed by the New York Biscuit Company to one Robert F. Hall, subject to said mortgage or deed of trust; and a deed, dated February 3, 1898, and recorded November 20, 1902, executed by said Hall to the National Biscuit Company, a New Jersey corporation,—all conveying eight lots, to-wit, lots from 22 to

29 inclusive in the re-subdivision of block 41 in Carpenter's addition to Chicago—be decreed to be void for want of authority in said Bliss and Hanscom, as trustees under said will, to execute the same, and be set aside as clouds upon the title of the appellants, and that the latter be decreed to be vested with the title to said lots; or that the defendant, the New York Biscuit Company, or the defendant, the National Biscuit Company, be decreed to hold the legal title of said lots in trust for appellants under the trust created by the will of Philo Carpenter, and be compelled to convey the same to the appellants by good and sufficient deed free of all liens and encumbrances; and that defendants be decreed to surrender possession of said lots to the appellants.

The bill was answered by the New York Biscuit Company, William Coffeen, the Central Trust Company, and the National Biscuit Company; and to such answer replication was filed. The bill was amended, and the unknown holders of the 1500 bonds above referred to were made defendants. Default was entered against the unknown owners and holders of said bonds.

Upon final hearing the circuit court rendered a decree, dismissing the bill and various amendments thereto, and the supplements thereto, for want of equity at the cost of complainants below, the appellants here. The present appeal is prosecuted from the decree of dismissal, so entered by the circuit court.

The facts, so far as it is necessary to state them in order to understand the questions involved, are substantially as follows:

On April 22, 1881, Philo Carpenter made his last will, the material portions of which, after providing for the payment of debts and funeral expenses, are as follows:

"*Second*—(1) I give and bequeath all my personal estate of whatever kind or character and wherever the same may be situated, of which I may die possessed or be entitled to, one-third to Theodore F. Bliss and Phineas L. Hanscom, in trust, as hereinafter provided, also one-third to my daugh-

ter, Anna A. Cheney, her heirs and assigns forever, and one-third to my daughter, Sarah G. Hildreth, her heirs and assigns forever.

"(2) And I hereby give full power to my said daughters Anna A. Cheney and Sarah G. Hildreth, and hereby direct them to take possession of all my personal estate as soon as I have departed this life, and divide the same into three equal parts or portions, and they may if they deem it necessary, sell or dispose of the whole or any portion of said personal property at private or public sale for the purpose of making such division, each one of my said daughters Anna A. Cheney and Sarah G. Hildreth taking a third and turning the remaining one-third into the hands of said Theodore F. Bliss and Phineas L. Hanscom, either in kind or in money. The same to be divided in such shares by my said daughters within the space of one year next ensuing after my death. And in the case of the death of either of my said daughters before such division, the survivor shall have full power to act and make such division.

"(3) I give and devise all my real estate of which I may die seized or possessed of whatever kind or nature and wherever the same may be situated to my daughters Anna A. Cheney and Sarah G. Hildreth, their heirs and assigns, but in trust nevertheless for the following purposes. I hereby empower and direct that my said daughters, Anna A. Cheney and Sarah G. Hildreth, as such trustees, divide all my said real estate into four equal parts or portions within the space of one year next ensuing after my death, and for the purpose of making such division, I give said trustees full power if they see fit to plat and divide said real estate or any portion thereof into lots, acknowledge and record the same. And in case of the death of either of my said daughters before such division, the survivor shall have full power to act and make such division.

"(4) I hereby direct that my said daughters shall convey one-quarter of said real estate so divided to the said Theodore F. Bliss and Phineas L. Hanscom, their heirs and as-

signs, in trust nevertheless, for the children of my deceased daughter Marietta C. Strong, their respective heirs and assigns, to be divided between said children share and share alike. Should either of said children of my said daughter Marietta C. Strong, die before receiving her share and portion, under this will, without leaving issue, I direct that the share or portion of such child be given to the surviving child, her heirs and assigns.

"(5) I desire and direct that the said children of Marietta C. Strong have the devises and bequests for and to them respectively as soon after my decease as may be consistent with the best interests of my estate. And I direct that the said Theodore F. Bliss and Phineas L. Hanscom, as such trustees, make such division and distribution accordingly, provided that each child must be of the age of twenty years before receiving her portion. In making distribution of my said estate I authorize said trustees, either before or after they, the said children, shall arrive at the age of twenty years and until final division and distribution, to make advances from time to time to said children in such manner and to such extent as they shall deem wise and prudent.

"(6) And I hereby provide that said trustees have and exercise all requisite authority and power, including that of alienation, necessary or convenient for the management of the said estate, and the division and distribution thereof as herein contemplated. The conditions of the above trust to apply to the personal property devised to said trustees. And in case of the death or refusal to act of either of said trustees, then the remaining one shall execute such trust, and in case of the death or refusal to act of both of said trustees, then my daughters Anna A. Cheney and Sarah G. Hildreth or the survivor of them shall have full power to name and appoint a trustee in their stead, such appointment to be in writing.

"(7) I give, devise and bequeath one-quarter of all my real estate so divided, to my daughter, Anna A. Cheney, her heirs and assigns forever.

"(8) I give, devise and bequeath one-quarter of all my real estate so divided, to my daughter, Sarah G. Hildreth, her heirs and assigns forever.

"(9) I direct that the remaining one-fourth part or quarter of my said real estate, shall be used in aid of or for the support of educational, religious and charitable institutions or objects, and in aid of and for the benefit of relations or friends of my family or any or either of said objects.

"(10) This trust to be executed by my said daughters from time to time and in whatever manner they shall see fit, using whatever part or parts of said remaining one-quarter for whatever purpose or purposes above mentioned they shall in their own judgment and discretion see fit and deem best, bearing in mind my own well known preference.

"(11) And I hereby provide that my said daughters Anna A. Cheney and Sarah G. Hildreth, have and exercise all requisite authority and power, including that of alienation, necessary or convenient for the management of my said estate, and the division and distribution thereof as herein contemplated. That in case of sale of any of the real estate by said trustees the purchaser shall not be required to see that the purchase money is appropriated by said trustees or trustee as provided in this will.

"(12) And in case of the death of either of my said daughters before the disposition of all or any part of said remaining one-quarter hereby vested in them, then the survivor shall be vested with the title of such remaining part, and is hereby fully empowered to dispose of the same and execute this trust. And in case of the death of both of my said daughters before the entire disposition of the said remaining one-quarter so set aside, then any remaining portion undisposed of shall be divided into three equal parts, one of said three parts or portions to be vested in the heirs of my daughter, Anna A. Cheney, one of said parts or portions to be vested in the heirs of my daughter, Sarah G. Hildreth, and the remaining one-third part to be vested in the heirs of my daughter, Marietta C. Strong.

"I hereby appoint Anna A. Cheney and Sarah G. Hildreth, executors of this my last will and testament, and in case of the death or refusal to act of either of said executors hereby appointed, then the remaining one shall act as executrix with like power and authority as both could have done, and I request that neither of my executors herein named shall be required to give bonds as such executors.

"In witness whereof I have hereunto set my hand and seal this 22d day of April, in the year of our Lord, 1881.

PHILO CARPENTER. (Seal.)"

On April 13, 1885, Philo Carpenter executed and published a codicil to said will in which he provided as follows:

"Whereas, I, Philo Carpenter, of the city of Chicago in the county of Cook and State of Illinois, did make my last will in writing, bearing date the 22d day of April, A. D. 1881, and did therein and thereby provide as follows, to-wit: (Here the testator quotes in his codicil the fourth paragraph of the second item of his original will as above set forth, and the first two sentences of the fifth paragraph of the second item of said will; and then proceeds in the codicil as follows): "Now it is my desire to, and I do hereby alter and amend said provision by the addition of the following clause, namely:

"I hereby direct that the division and distribution therein mentioned shall not be made by my said trustees, Theodore F. Bliss and Phineas L. Hanscom, during the lifetime of William W. Strong, the father of said children, notwithstanding that the said children or any or either of them may arrive at the age of twenty years before his death. It being my wish and intention that no portion of said property shall vest in said children, or either of them, until after the death of their father, except such advances as shall have been made as provided in said will, and in case of the death of both of said children prior to their father's decease, then I direct said trustee to convey such portion as remains in their hands, one-half to the children of Anna A. Cheney, their heirs and assigns, in equal proportions, and the other half to the chil-

dren of Sarah G. Hildreth, their heirs and assigns, in equal proportions, and the whole of this amendment shall apply to both the real and personal property devised to said trustees."

Philo Carpenter died on August 7, 1886. His will was admitted to probate in Cook county, and his daughters, Mrs. Cheney and Mrs. Hildreth, qualified as executors thereof. Appellants here, complainants below, Alice M. Dickson and Mittie C. Ambler, are the daughters of Marietta C. Strong, and grand-daughters of the testator, Philo Carpenter, and it is conceded that they are more than twenty years of age. Mrs. Dickson became of age on July 27, 1895, and Mrs. Ambler on December 22, 1898. The executors divided the real estate into four equal parts, and conveyed one of such parts to Theodore F. Bliss and Phineas L. Hanscom, as trustees, on July 23, 1887, and the lots described in the bill are a part of the real estate so conveyed to them, as trustees under the will of Philo Carpenter. Bliss and Hanscom accepted the trust, and received from the executors one-third of the personal estate, consisting of cash, and stocks, and a bond or bonds, and a quarter of the real estate.

The eight lots above described, which were conveyed to Bliss and Hanscom, trustees, by the executors, constituted one-quarter of a whole block of land, situated upon the west side and lying between Washington and Randolph streets on the south and north, and Morgan and Ann streets on the west and east. The value of the block at the time of its sale, as hereinafter stated, was $200,000.00, and there is no dispute between the parties as to such value.

The trustees, Bliss and Hanscom, did not properly administer the trust reposed in them, or, at any rate, were careless in their administration of the same. On September 22, 1899, the appellants filed a bill in the circuit court of Cook county for an accounting against Bliss and Hanscom, and to have them removed from the trusteeship. Bliss and Hanscom, the trustees, were defendants to the suit for an accounting, but the appellees herein, who purchased the property as hereinafter stated, from Bliss and Hanscom as trustees, were

not parties to the suit for an accounting. In that suit, on September 28, 1899, James Furlong was appointed receiver and took title from the trustees of all the trust property, both real and personal, then in their hands.

William W. Strong, the father of the appellants, died on June 25, 1900.

On November 30, 1900, an interlocutory decree was entered in the suit for an accounting, in which the court found that Bliss and Hanscom, as trustees, had no power to purchase, or take title, as purchasers, to any real estate, and that the power of alienation, conferred upon them by the will, was not general, but limited to such alienation as should be necessary and convenient for the management of the estate and the distribution and division directed thereby, and that they had no power, as trustees, to sell the eight lots above described, or give any valid conveyance thereof, unless, at the time of such sales, some emergency arose, or the condition of the trust estate was such as to render such sales necessary to the proper management of the trust estate; and the cause was thereupon referred to a master for an accounting. Afterwards, on August 16, 1901, the master made his report. It appears that, after evidence was taken before the master, a basis of settlement was agreed upon between the appellants and Bliss and Hanscom as trustees. In pursuance of this settlement, the master's report was prepared by the parties by agreement, and was signed by the master without argument at their request. The decree, based upon the master's report, was entered by agreement by the circuit court. The decree, so entered by agreement, was entered on August 16, 1901, confirming the master's report, removing Bliss and Hanscom as trustees, and giving a money judgment against them for $32,576.21, and directing them as trustees, and the receiver Furlong, to convey to the appellants certain real estate, including the lots here in controversy, which had been conveyed to Coffeen. Afterwards on August 23, 1901, Bliss and Hanscom did convey to the appellants the real estate hereinbefore described, and the remainder of the real estate,

which they obtained from the estate of Philo Carpenter, and also all the real estate, which they obtained by reason of loans or purchases. The money decree against the trustees for $32.576.21 was settled for the sum of $3500.00 by the appellants, based upon the statement of the trustees that they were wholly insolvent and had no property. As a part of the agreement for a settlement, the trustees, Bliss and Hanscom, were released by appellants upon the payment of $3500.00. On August 27, 1901, a suit in ejectment was commenced by the appellants against the New York Biscuit Company, and others, which said suit is still pending.

It appears that no advancements were made by the trustees, Bliss and Hanscom, to either of the appellants, except the sum of $500.00 in June, 1899.

BULKLEY, GRAY & MORE, for appellants.

PENCE & CARPENTER, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

On September 18, 1890, Bliss and Hanscom, as trustees under the will of Philo Carpenter, held the legal title to the eight lots here in controversy, being one-quarter of block 41 in Carpenter's addition. On that day the trustees, Bliss and Hanscom, sold said lots to the New York Biscuit Company for $50,000.00 in cash. A deed was made by the trustees to William Coffeen, who at once transferred the title to the New York Biscuit Company. It is not contended that William Coffeen paid any consideration for the property, and it is conceded that he took the title as the agent or trustee of the New York Biscuit Company. There is no testimony, tending to show that the property was not sold for its full value. It was purchased by the New York Biscuit Company in good faith, and for a valuable consideration. As evidence of the good faith of the sale, so far as value is concerned, it appears that the other three-fourths of the same block were sold for the same price. Mrs. Cheney sold her one-fourth

interest for $50,000.00, and Mrs. Hildreth sold her quarter interest for $50,000.00. The New York Biscuit Company purchased the whole block for $200,000.00, and have made valuable improvements upon the same. The proof shows that, out of the $50,000.00 paid by the New York Biscuit Company to Bliss and Hanscom, trustees, for the eight lots in question, the sum of $1250.00 was paid out to an agent as commissions for making the sale. The remainder, $48,-750.00, was turned over to the trustees.

The appellants insist that Bliss and Hanscom, trustees, had no power under the will to sell these lots, and, therefore, that the conveyance, made by them to Coffeen, and through him to the New York Biscuit Company, was void. On the other hand, the appellees claim that Bliss and Hanscom had power under the will to sell the real estate; and that, even if they had no power to make the sale, yet that the appellants, as the beneficiaries under the trust, have acquiesced in and ratified the sale, and are, therefore, estopped from setting up its invalidity.

*First*—The first question, therefore, is whether or not the trustees, Bliss and Hanscom, had the power, under the will of Philo Carpenter, to make the sale of the lots in question to the New York Biscuit Company. The determination of this question involves an examination of the various provisions and clauses of the will, and of the codicil thereto.

As we understand the contention of counsel for appellants, it is, not that no power of sale was conferred by the will upon the trustees, Bliss and Hanscom, but that the power of sale, conferred upon the trustees, was a limited one. It is said that such power of sale was a limited one in two respects: First, that by the terms of the will it was confined to the personal property, and that no power was conferred upon the trustees to sell the real property; and second, that, if the power of sale should be considered to apply to both real and personal property, it was limited by this condition precedent, that, in the management of the estate, it should be shown to be indispensable to sell the real estate, and that it was the

duty of third persons, purchasing the real estate, to ascertain that it was necessary for the trustees to sell the same in order to properly manage the estate.

After a careful consideration of the language and clauses of the will, we are of the opinion that the will conferred upon the trustees, Bliss and Hanscom, the power to sell the land, as well as the personal property. The will provides for the division of the personal property into three parts, and then provides for the division of the real property into four parts, and for the transfer of one-third of the personal property, or of the cash into which his executors might convert the personalty, to each of his daughters Mrs. Cheney and Mrs. Hildreth, and the children of his deceased daughter, Mrs. Strong, who are the appellants herein. He then provides for a transfer by his executors of one-fourth of the realty to Bliss and Hanscom, as trustees for the appellants, his grand-daughters, and one-fourth to each of his daughters, Mrs. Cheney and Mrs. Hildreth, and the remaining one-fourth to the latter in trust for certain charitable and educational purposes. The will then provides for the management and the division and distribution "of the said estate." The words, "the said estate," refer to an estate consisting of both the real and personal property. If the will in its provisions in regard to the management and division refers to the personalty only, then it would be silent as to the management and division of the real estate. Such an interpretation of the will has no support in the language used by the testator.

In paragraph 5 of item second of the will, the testator directs that the children of his daughter, Mrs. Strong, "have the devises and bequests for and to them respectively, as soon after my decease, as may be consistent with the best interests of my estate." The word, "devises," evidently refers to real estate, and the word, "bequests," to personalty, and, as these words are followed by the words, "best interests of my estate," the intention evidently was to refer to realty as well as personalty. Again, in paragraph 6 of the second item of the will, the testator uses this language: "I

hereby provide that said trustees have and exercise all requisite authority and power, including that of alienation, necessary or convenient for the management of the said estate, and the division and distribution thereof as herein contemplated." The powers, conferred upon the executors in reference to the management of the estate and its division and distribution, include the power of alienation. The word, "alienation," means the transfer of the property and possession of land, tenements, or other things from one person to another, and is particularly applied to absolute conveyances of real property. (Bouvier's Law Dic. title "Alienation.") The power of alienation is to be exercised in the management "of the said estate," that is to say, of the whole estate, including both real property and personal property. The use of the word, "alienation," in the sixth paragraph clearly imports an intention on the part of the testator to confer upon the trustees the power to alienate or transfer the real estate, if it should be necessary for the proper management of the estate, or for the division and distribution thereof in the manner contemplated by the will. Moreover, in paragraph 5, the testator authorized these trustees, either before or after the appellants should arrive at the age of twenty years, and until final division and distribution, to make advances from time to time to them in such manner and to such extent, as the trustees should deem wise and prudent. The power to make advances, in connection with the other provisions of this will, certainly implies the power to sell the real estate for that purpose.

Counsel for the appellants base their contention, that the power of sale conferred upon the trustees refers only to personal property, upon these words in the sixth paragraph of the second item of the will, to-wit: "The conditions of the above trust to apply to the personal property devised to said trustees." The language used in the will certainly conferred the power to sell both the real and the personal property, and, this being so, the trustees could only be deprived of that power by subsequent language in the will, which is explicit

in its terms. The clause here relied upon is not explicit, because it does not say that the conditions of the above trust are to apply to the personal property only, but simply that they are to apply to the personal property. The meaning of the testator was, that the provisions of the trust should apply to the personal property, as well as to the realty, and, inasmuch as the last antecedent was real estate, the use of the clause in question was merely for the purpose of removing any doubt that such provisions were also intended to refer to personal property, as well as the real estate. The clause in question was added in order to remove any doubt as to whether personal property was intended to be included. If all the powers in question had been intended to be limited to the personal property alone, it would have been easy to use language indicating such an intention.

That the construction thus given to the will is the correct one appears further from the language used in the codicil. The codicil was not intended to revoke the provisions of the will, contained in paragraphs 4, 5 and 6, but was merely an addition thereto. In the codicil, after providing that the division and distribution, so far as the interests of the appellants were concerned, should not be made until after the death of their father notwithstanding each of them may have arrived at the age of twenty years, and after stating his intention to be that no portion of the property shall vest in the appellants, or either of them, until after the death of their father, except such advances as shall have been made as provided in said will, and after providing that, in case of the death of both of said appellants prior to the father's decease, the trustees should convey such portions as should remain in their hands, one-half to the children of Mrs. Cheney, their heirs and assigns, in equal proportions, and the other half to the children of Sarah G. Hildreth in equal proportions, the codicil contains these words: "And the whole of this amendment shall apply to both the real and personal property devised to said trustees." It seems to us that, if the codicil be construed in connection with all the provisions of the orig-

inal will, no language could more clearly indicate an intention to include real estate as well as personal property than the language last quoted.

In addition to the language last quoted, the codicil contains these words: "In case of the death of both of said children prior to their father's decease, then I direct said trustees to convey such portion as remains in their hands," etc. A remainder may be limited after the termination of a life estate, given to the first devisee with power to sell and convey the fee; and under the decisions of this court, these words in the codicil: "I direct said trustees to convey such portion as remains in their hands," imply a power to sell the fee, or, at any rate, must be regarded as proof of the intention of the testator that the fee might be sold. (*Markillie* v. *Ragland,* 77 Ill. 98; *In re Estate of Cashman,* 134 id. 88; *Skinner* v. *McDowell,* 169 id. 365; *Saeger* v. *Bode,* 181 id. 514).

Counsel for appellants rely upon the case of *Thompson* v. *Adams,* 205 Ill. 552, for the contention, that the use of the words "then remaining," or, "as remains," does not indicate any purpose of the testator to vest the trustee with the power of sale. In that case, however, the words, "then remaining," were held not to indicate an intention to confer a power of sale of the real estate because there was no other provision in the will, which created a doubtful power of sale, to which the words, "then remaining," might refer. Here, however, as we have seen, there are many provisions of the will, conferring a power of sale, or creating a doubt as to whether or not such power was conferred, and, therefore, the use of the words, "as remains in their hands," explains and makes certain the previous language used conferring or implying the power of sale.

In *Markillie* v. *Ragland, supra,* where the testator declared it to be his will that whatever might remain of his estate, real and personal, at the death of his wife should descend to his heirs according to law, it was said that the use of these words, or similar words, was sufficient to remove

all doubt as to the existence of such power, it being there said (p. 102) : "Had he not intended that his wife should have power to sell his real estate, why speak of what should remain of it at his wife's death? * * * He, we think, clearly intended that his wife should have the unlimited, discretionary power to sell any or all of his property, whether personal or real."

In the case of *In re Estate of Cashman, supra,* it was said (p. 92) : "The rule is also well established in this State that a life estate may be created with power to dispose of the fee, and limit a remainder after the termination of the life estate. * * * The clause in the will in question is not unlike a provision in a will passed upon in *Markillie* v. *Ragland,* 77 Ill. 98. There the testator devised his real and personal estate to his wife, during life, with power of disposal. This was followed by a provision, that, upon the death of the wife, whatever might remain of the estate should descend to his heirs." And after quoting the above extract from the *Markillie case,* this court says: "The same may be said here. Had the testator not intended that his wife should expend any portion of the property devised to her, why speak of the unexpended portion of the property at her death?" In the *Cashman case* this court in referring to the case of *Henderson* v. *Blackburn,* 104 Ill. 227, said that the words, "and after her death if there is anything left," imply a power of disposition by the widow of the whole property devised.

In *Skinner* v. *McDowell, supra,* we again said: "From the language, 'in case anything be left after her death,' it is also manifest that the testator intended his wife to have the right to absolutely dispose of the property, even beyond her death, if she deemed it necessary and proper." Again, in *Saeger* v. *Bode,* 181 Ill. 514, the doctrine was announced that the use in a will of such words as these,—"in case anything·be left after her death," implies a power of disposition by the widow of the whole property devised.

It must necessarily follow that, where a will contemplates that only a part of the estate may remain in the hands

of the trustees at the time of the period of distribution, it must also contemplate that some portion of the estate might be sold and disposed of before such period of distribution arrives. The codicil in express terms gives the power to Bliss and Hanscom, as trustees, to make advances from time to time, and contemplates that a portion of the estate may remain. It also expressly gives the power to the trustees to convey and alienate, as may be necessary and convenient for the management of the estate; and after such provision the codicil expressly states that such powers so to be exercised shall apply to both real and personal property devised to the trustees. In other words, discretion is conferred upon the trustees to exercise the power conferred, either for the purpose of advancement, or of management, or of division and distribution.

Counsel for appellants claim that the trustees, as a matter of law, had no authority to make advances to the appellants during their minority upon the alleged ground that such advances would be in the nature of gifts to the father of the children, during whose lifetime no portion of the property devised was to vest in the appellants, and upon the further ground that a father, as a matter of law, is bound to support his children during minority, and that, if he has sufficient ability to maintain his infant children, a trustee cannot apply the estate to their maintenance without an order of court. Many of the cases, which are mainly English cases, on which counsel for the appellants rely for this contention, are cases where no provision is made in the will or deed of trust for the making of such advances by the trustees, or where there is a devise of the *corpus* of the estate to another person after the death of the children, so that the remainder-men cannot be deprived of their portion of the estate by giving it to the life tenant, unless there is some power in the will permitting it to be done. But, in the case at bar, the will expressly provides that the trustees may "make advances from time to time to said children in such manner and to such extent as they shall deem wise and prudent." The codicil also

recognizes the power, contained in the original will, by the reference already quoted, which it makes to "such advances as shall have been made as provided in said will." There is no evidence in this record to show whether or not the father of these appellants, William W. Strong, was able to support them, but we conceive it makes no difference under the terms of the present will whether he was or not. The question is not here whether or not a trustee has the power to make advances for the maintenance of a child from an income, provided by the will, which is more than sufficient to maintain the child, or from the principal or *corpus* of the estate, which after the death of the child is to go to some other person. As the power to make advances is here expressly conferred by the will, and the trustees have the discretion to determine the manner in which that power is to be exercised, the courts will not undertake to control their discretion. As has already been seen, there may be cases, where the life tenant may have power to dispose of the fee, although a remainder is limited after the termination of the life estate. (*In re Estate of Cashman, supra.*) So, here, although there is a provision that, in case of the death of either of the appellants before receiving her share without leaving issue, such share shall be given to the surviving appellant, her heirs and assigns, yet, the power of sale being conferred, the fee of the estate may be sold for the benefit of the beneficiary. Many cases are referred to by counsel in England, where the income of the estate was more than sufficient to maintain or support the children, and the question arose whether the trustees had a right to apply the whole income for their maintenance and support, or only so much of the income as was necessary. Other cases, also, are referred to where the question arose, whether or not the income, being insufficient to maintain the child or children, the trustee had a right to draw upon the *corpus* or principal, in order to support and maintain such children. In such cases, the right to use the whole income instead of a part of it, and the right to draw on the principal or *corpus* of the estate, were denied, but no power in such

cases was conferred upon the trustees to make such advances, and no discretion vested in them as to the mode of making the same. Hence, the cases in question have no application here.

Counsel for appellants also contend that no power of sale could be exercised for the purpose of managing the estate. It is undoubtedly true as a general rule, that, where the power to manage an estate is conferred, such management does not necessarily involve and include the power of sale. By management is meant the control of the property to the end that income and profit may be derived from it. But we see no reason why management may not involve a power of sale, where the will expressly includes such power in the directions given in regard to such management. Here, paragraph 6 of item second of the will provides "that said trustees have and exercise all requisite authority and power, including that of alienation, necessary or convenient for the management of the said estate." The power, conferred upon the trustees to manage the estate, is thus expressly made to include the power of alienation, or, in other words, the power to sell and convey. It follows that the authorities, referred to by counsel, which hold that the power to manage does not involve the power to sell, have no application here. Even in those cases, however, where the power to make advances and to manage estates is restricted in the mode contended for by counsel, the court will not interfere where the power of the trustees in that regard is discretionary, if the trustees choose to exercise the discretion conferred upon them. (2 Perry on Trusts, sec. 612).

The language of the will under consideration confers a discretionary power upon the trustees, both in the matter of advances and in the matter of the management of the estate. The words, "to make advances from time to time to such children in such manner and to such extent as they shall deem wise and prudent," involve and imply a discretion on the part of the trustees to determine in what manner and to what extent the advances are to be made; also, the

words, "necessary or convenient for the management of the estate," imply a discretion on the part of the trustees, because power is thereby conferred upon them to determine what is necessary or convenient for the management of the estate, and, as the power of alienation is conferred, they are vested with a discretion to determine when they shall sell and convey any part of the estate for the necessary and convenient management thereof.

If it be true that the powers conferred by the will upon these trustees are discretionary, then the rule is applicable that, wherever such a power is discretionary, a court of equity will never interfere before or after sale, except in cases of actual fraud or collusion. (2 Perry on Trusts, secs. 510, 511; *Cherry* v. *Greene,* 115 Ill. 591; *Kirkland* v. *Cox,* 94 id. 400; *Crozier* v. *Hoyt,* 97 id. 23). Mr. Perry, in his work on Trusts, (sec. 511), says: "If the trustees exercise their discretionary powers in good faith and without fraud or collusion, the court cannot review or control their discretion." In *Crozier* v. *Hoyt, supra,* this court said (p. 31): "Where, as in this will, a discretionary power is conferred, and the power is exercised in good faith and without fraud or collusion, a court of equity will not review or control it. * * * We think, in the absence of fraud and collusion, which are not charged in the bill, the wife was empowered to sell and convey, and the purchasers are entitled to protection under her deeds."

Where the powers conferred are thus discretionary, and have been exercised by the trustees, an action in ejectment will not lie to recover the lands so sold. (*Kirkland* v. *Cox, supra*).

Where such discretionary powers are invested in the trustees, the purchaser is not bound to make inquiry as to whether the trustees have properly exercised their powers or not. Here, there is no charge of fraud made against the purchaser, the New York Biscuit Company, in the matter of its purchase of this land, nor any charge of fraud made against the trustees in making the sale. The charges, which

were found to be sustained against the trustees, were in reference to their management of the trust funds, which came into their hands after the sale of the property. They received $48,750.00 of purchase money, and they received personal property, and other lands besides those here in question. They were found to be guilty of mismanagement in the manner, in which they invested the trust funds and trust property which came into their hands after the sale of the property here in question, but there is nothing to show that there was any fraud or collusion in the matter of the sale of this property on the part of the trustees, or of its purchase on the part of the New York Biscuit Company. This being so, the rule already stated has application. The purchaser is not obliged to investigate the accounts of the trustees with a view of determining the amount of the assets, and the disposition that has been made of them, nor has he any means of investigating such accounts. (2 Perry on Trusts, sec. 789; *Wilson* v. *South Park Comrs.* 70 Ill. 46). In the present case, the deed made by the trustees contains all the necessary recitals to show the exercise of the powers conferred by the will, or, in other words, it recites a compliance with the requirements of the will, and, this being so, the purchaser was not bound to go behind the deed to ascertain whether or not the recitals were true. (*Wilson* v. *South Park Comrs. supra*).

It also follows, in view of the discretion thus conferred upon the trustees, that the purchaser was not bound to look to the application of the purchase money. (2 Perry on Trusts, secs. 790, 793; *Seaverns* v. *Presbyterian Hospital,* 173 Ill. 414; *People* v. *Simon,* 176 id. 165; 2 Story's Eq. Jur. sec. 1135). At the time the present sale was made, the beneficiaries were infants and incapable of giving receipts, and, hence, under the rule laid down in the above authorities, the purchaser was not bound to see to the application of the purchase money. Perry, in his work on Trusts, (vol. 2, sec. 793) says: "If, therefore, a sale is directed when the *cestuis que trust,* or some of them, are not in existence, or *sui juris,*

or of age, or of sufficient capacity to act, there must be an implied intention that the receipts of the trustees shall be valid releases of the purchase money."

*Second*—But if we are wrong in the views heretofore expressed, there is another reason why the prayer of the bill in the present case should not be granted. Where a trustee has sold property without fraud or violation of his trust, the *cestui que trust,* or beneficiary, has the option either to take the property, or disclaim any title thereto, "and proceed upon any other remedies to which he is entitled either *in rem* or *in personam.* The substituted fund is only liable to his option. But he cannot insist upon opposite and repugnant rights." (2 Story's Eq. Jur. sec. 1262). It follows that, "if a trustee of land has sold the land in violation of his trust, the beneficiary cannot insist upon having the land and also the notes given for the purchase money; for by taking the latter, at least so far as respects the purchaser, he must be deemed to affirm the sale. On the other hand, by following his title in the land, he repudiates the sale." (Ibid). In the case at bar, the appellants had the right to elect to pursue one of two remedies. They could either ratify the conveyance, made by their trustees to the New York Biscuit Company and take the money, or they could disaffirm the sale and proceed to recover the land, but they cannot have both remedies, and their election, once made, is final.

Perry, in his work on Trusts, (vol. 2, sec. 828) says: "And a *cestui* cannot keep the proceeds of a sale, and also recover the property from one who gave value for it. The right of a *cestui* to follow misapplied funds, and his right to hold the trustee as a debtor, are not concurrent, but alternative. He may elect which right he will stand upon, but having exercised his option and got a judgment or settlement, he cannot be allowed to insist on repugnant rights, at least as against other creditors of the trustee." The *cestui que trusts* are not entitled to the land and also the purchase money. (*Breit* v. *Yeaton,* 101 Ill. 242; *Murray* v. *Lylburn,* 2 Johns. Ch. 441; *White* v. *Sherman,* 168 Ill. 589). It is

impossible for us to examine all of the evidence upon this branch of the case. It appears, however, that the trust account book of Bliss and Hanscom was introduced in evidence upon the trial below by the appellants. This book, and the testimony of witnesses in connection with it, show that the $48,750.00 of purchase money, paid by the New York Biscuit Company, went into the hands of Bliss and Hanscom, and a greater part of such purchase money, if not all, was invested by them. Bliss testifies that he and Hanscom, (who has since deceased), invested the entire proceeds of the sale to the biscuit company substantially, and that the property, which they bought, or the evidences of indebtedness which they purchased with that money, were turned over to the receiver in the accounting suit. The sum of $48,750.00 was deposited in the bank to the credit of the trustees. The trustees purchased a certain block 11 in court partition for $25,250.00, and paid the latter amount in cash. The sum of $25,250.00, paid for this block 11, was a part of the $48,750.00. On August 23, 1901, the trustees as such, and Furlong, the receiver, conveyed the whole of this block 11 to the appellants in the accounting suit. In addition to this, the proof shows that loans were made to various parties of the moneys embraced in the sum of $48,750.00. Notes, representing the amounts of these loans, were turned over to the receiver, Furlong, in the accounting suit, and some of them were paid to him, and the trustees in their accounting were given credit for that money to the extent at least of $4400.00. This money, as well as block 11, was accepted by the appellants, who subsequently settled the accounting suit with the trustees, and discharged them. The proof shows that, when the $48,750.00 went into the hands of the trustees, Bliss and Hanscom, they had only $620.93 of trust funds. Subsequently, they made loans to various parties, amounting to nearly $40,000.00, which loans must have been made from the fund of $48,750.00 and the notes, representing these loans, were for the most part turned over to the receiver, and through the receiver to appellants. The proof is quite clear

that some $30,000.00 of the purchase money, paid by the New York Biscuit Company, was actually accepted by the appellants. Other parts of such purchase money were invested and re-invested and turned over from time to time, so that the estate got the benefit of the interest. When Furlong was appointed receiver, the trustees, Bliss and Hanscom, under the direction of the court, conveyed and assigned to Furlong everything which they had in their hands belonging to the trust estate.

In view of what is stated above, it appears clearly that the appellants received, both through their trustees and by their own acts, the benefit of the purchase price, paid by the New York Biscuit Company for the quarter interest in the Carpenter block, and, therefore, they cannot come into court and ask for a re-conveyance of that property, alleging that the purchaser knew, when the purchase was made, that Bliss and Hanscom had no power of sale. If the appellants have the right to follow the land, they must tender back the purchase money. Otherwise, by keeping the money they affirm the sale. The law will not permit them to do both, and the election once made is binding and final. It appearing here that the appellants have accepted at least $30,000.00 worth of securities and land bought by the trustees with the money paid by the New York Biscuit Company, as shown by the accounts of the trustees, the master's report, and the decree and settlement in the accounting suit, they must be held at this time to have affirmed the sale made by their trustees. Under the circumstances, the appellants have exercised their election, and are estopped now by their acquiescence and ratification from proceeding against the land, purchased by the appellees in good faith. The doctrine above referred to is sustained by numerous authorities in this and other States. (*Bonner* v. *Holland*, 68 Ga. 718; *Harris, Trustee,* v. *Collins*, 75 id. 97; *Equitable Life Ass. Society* v. *May*, 82 id. 646; *Carter* v. *Gibson*, 61 Neb. 207; *Smith* v. *Lusk*, 119 Ala. 394; *Marx* v. *Clisby*, 130 id. 502; *Creamer* v. *Holbrook*, 99 id. 52; *Knox* v. *Laird*, 92 Ga. 123; *Fowler* v. *Bowery*

*Savings Bank,* 113 N. Y. 450; *Cleland* v. *Casgrain,* 92 Mich. 139; *Crook* v. *Bank,* 83 Wis. 31; *Penn* v. *Heisey,* 19 Ill. 295).

It may be said that, under the proofs in this case, it is not established that the appellants have received the whole of the $50,000.00, less commissions, paid by the purchaser to the trustees. It is shown clearly by the proof that they have received in land and money upwards of $30,000.00 of the purchase money. The estoppel operates as well when the beneficiary accepts a part of the purchase money, as when he accepts the whole. In *Knox* v. *Laird,* 92 Ga. 123, it was said: "It is a principle of law too well settled to require discussion or citation of authority, that a devisee under a will cannot ratify in part, and in part repudiate, the alleged illegal sale of land by an executrix. In case such a sale should be set aside at all, the status of the parties, existing before the sale was made, would have to be restored, and this would be utterly impossible, if a part of the transaction were allowed to stand. It is incumbent upon parties, who have any reason to set aside a sale, to repudiate it altogether. No other course is consistent or practicable. By her solemn admission *in judicio,* as expressed in one of the amendments referred to, Mrs. Black assented to the receipt by the executrix of $850.00 of Blake's money in part payment of the land sold to him, and to the re-investment by the executrix of this sum in other lands. Mrs. Black thus conclusively and absolutely abandoned whatever right she may have had, if any, to set the sale aside. Having elected to ratify the sale and proceed against Knox for the balance of the purchase money alleged to be due by him, Blake's title is free from invalidity, and in no event could Mrs. Black now recover the land itself, or any portion thereof, from him."

Nor is the application of this principle of estoppel affected in any way by the fact, that the beneficiaries were minors. In *Marx* v. *Clisby,* 130 Ala. 502, it was said: "An infant may not create an estoppel; yet, under circumstances, the benefits of a particular transaction may have been so appropriated for his advantage that he will not be heard to

gainsay it. * * * It is without dispute that the money borrowed and comprising the mortgage debt, was applied exclusively to the payment of the debts of the testatrix, which, of course, were a charge upon this lot, as well as upon the entire property of the trust estate belonging to these complainants, * * * and resulted in relieving the complainants' estate to the extent of the debts against it, paid out of the proceeds. * * * This being true, the complainants must be held to have received the benefit of the transaction. Having received it they are estopped to deny the validity of the sale and at the same time enjoy the benefits derived from the appropriation of the money borrowed from Hirsh, whose right to collect it was destroyed by his purchase at the foreclosure. * * * They are estopped to deny the validity of the sale and at the same time enjoy the benefits derived from the appropriation of the purchase money. And this principle applies to minors, as well as adults."

In *Penn* v. *Heisey, supra,* where there was a sale by a guardian of property belonging to infant children, it was said (p. 297): "The proof also establishes the fact, that plaintiffs in error have received the full benefit of the tract of land so purchased for them by their guardian, and have actually sold it for a large sum of money, and the question arises, does not this, in equity, amount to an estoppel? Are not plaintiffs in error estopped from setting up title to this lot, when they have received and enjoyed the benefits of the proceeds of its sale, and it is now in the possession of an innocent purchaser without notice? It is a principle that, though in general, estoppels are odious, as preventing a party from stating the truth, yet they are favored when they promote equity. * * * The application of this principle does not depend, as we understand it, upon any supposed distinction between a void and voidable sale. If the sale be the one or the other, receiving the money or its proceeds in other valuable property with a knowledge of the facts, touches the conscience of the party, and therefore establishes the right of the party claiming under such sale, in one case as well as

in the other. The proof in this case shows that the plaintiffs knew all the facts respecting the sale of the lot by their guardian and the purchase and conveyance of other lands, out of the proceeds. An equitable estoppel prevents a party from using a title which, in good conscience, ought to inure to the use of another; and if such a case was ever presented, we think this one. Such estoppels are and should be favored in law, honor and conscience, for the truest and best of reasons, that a man having received a benefit in one character, the value of the thing, or of the property, shall not afterwards receive the thing or property itself, in the same or another character. This principle, so equitable and legal, runs throughout all the transactions and contracts of civilized life. Here the plaintiffs in error received the proceeds of the sale of this lot, a part in the nurture and education of the wife, and a part in eighty acres of land, which they have sold. * * * This principle of equitable estoppels of this character, applies to infants as well as adults; to insolvent sureties and guardians, as well as persons acting for themselves; and they have place, as well, when the proceeds arise from a sale by authority of law, as when they spring from the act .of the party."

In the case at bar, the proof shows that the appellants in the accounting suit made an examination of the trustees' accounts, and knew all the facts surrounding the condition of the trust estate.

Counsel for appellants say that the proof upon this subject of ratification or acquiescence was improperly introduced because there was no allegation in the answer, under which such testimony was properly admissible. The answer, filed by the appellants, contained the following allegation: "And these defendants allege that said complainants have by their acts and conduct ratified and approved of the sales, so made by said trustees unto said Coffeen." We think that this allegation in the answer sufficiently indicated that the .defendants below relied upon the defense of waiver, acquiescence and ratification.

It is said by appellants that the allegation was too general in its terms and amounted to a mere conclusion of law. It appears that no exception was made to the answer, but even if this criticism upon the allegation in the answer is correct, it is to be remembered that there is a distinction between estoppel by record or deed, commonly known as technical estoppel, and estoppel *in pais,* or equitable estoppel arising from act and conduct. The latter estoppel may be given in evidence under a plea of the general issue. Estoppel *in pais* may be specially pleaded, but it is not necessary, as evidence of estoppel *in pais* is admissible under the general issue. (8 Ency. of Pl. & Pr. p. 6; *German Fire Ins. Co.* v. *Grunert,* 112 Ill. 68; *Mann* v. *Oberne,* 15 Ill. App. 35; *Welland Canal Co.* v. *Hathaway,* 8 Wend. 483).

For the reasons above stated, we are of the opinion that the decree of the court below, dismissing the bill, was correct. Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*