(No. 14308.—Reversed and remanded.)

GUY P. LEWIS et al. Appellants, vs. GEORGE P. VANCLEVE
et al.—(JAMES A. HENSON et al. Appellees.)

*Opinion filed February 22, 1922—Rehearing denied April 13, 1922.*

1. MINORS—*when doctrine of estoppel is applicable to infants.*
As a general rule the doctrine of estoppel has no application to
infants, but there is an exception to the rule in case the conduct
of the infant on which the estoppel is sought to be based has been
intentional and fraudulent and the infant at the time was of years
of discretion.

2. DEEDS—*when a grantor is estopped to disaffirm deed made
when he was a minor.* Where a mother, intending to defraud cred-
itors, conveys her property, without consideration, to her minor
son, who a few months later, but while he is still under age, con-
veys the property back to his mother and after attaining his ma-
jority actively assists her in selling the property and receives a part
of the consideration, he is estopped, in equity, to repudiate his deed
and assert title as against subsequent purchasers and mortgagees.

APPEAL from the Circuit Court of Macon county; the
Hon. WILLIAM K. WHITFIELD, Judge, presiding.

LEFORGEE, BLACK & SAMUELS, for appellants.

VAIL, POGUE & ALLEN, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of
Macon county dismissing a bill filed by appellants, as com-
plainants, to foreclose a trust deed on certain real estate.
In addition to praying a foreclosure of the trust deed the
bill prayed that certain deeds purporting to convey the prop-
erty to defendant James A. Henson be declared null and
void and set aside as a cloud on the title to the property.
The master in chancery to whom the cause was referred
to take testimony and report his conclusions, reported that
Henson held title superior to that through which complain-
ants claimed, and that they were not entitled to a decree as
prayed in the bill. The chancellor overruled exceptions to

the master's report, entered a decree approving and confirming it, denied any of the relief prayed in the bill, and adjudged and decreed that the persons who executed the notes secured by the trust deed sought to be foreclosed pay the amount due on said notes to the complainants. This appeal is prosecuted from that decree.

The facts alleged in the bill are, that prior to June, 1911, Helen G. Terhune was the owner in fee simple of lot 4, in block 6, of a certain addition to the city of Decatur, and she and her husband, Isaac H. Terhune, occupied the premises as a homestead; that prior to June, 1911, Helen and her husband became jointly indebted to numerous persons, who were demanding payment and were threatening to secure judgments; that on June' 3, 1911, they conveyed said premises to their son, William G. Terhune, who resided on the premises with his parents; that the conveyance was made to defraud creditors, and it was fraudulently agreed and understood between the grantors and grantee that it was made for the purpose of delaying and defrauding the grantors' creditors, and with the distinct understanding between the parties that William should hold the property in trust for his mother and would at her request convey the premises back to her or to such person as she designated; that the family continued to reside on the premises until September 21, 1911, when William executed a general warranty deed to his mother conveying the premises back to her in fee simple, in conformity with the agreement made when she conveyed the property to him, which deed was duly recorded; that there was nothing on the records of Macon county which showed any defect in Mrs. Terhune's title and complainants had no notice that there were any defects or imperfections. After the deed was made by William to his mother, she and her son became indebted to George P. VanCleve, which indebtedness was evidenced by notes signed by them, and on the 31st day of July, 1912, VanCleve secured a judgment against them for $52.87,

February 10, 1914, another judgment against them for
$310, and January 9, 1914, another judgment for $215.83.
On the 23d of March, 1914, Mrs. Terhune, being then a
widow, conveyed the premises to VanCleve for a consid-
eration of $2500, which was partly paid by the satisfaction
of the judgments mentioned and the balance in cash. The
bill alleges William acted in the transaction resulting in
the conveyance to VanCleve for his mother and received
a part of the consideration, which he appropriated and ever
since has retained. In March, 1914, VanCleve secured a
loan on the premises for $1000, and he and his wife exe-
cuted a trust deed to Guy P. Lewis, as trustee, to secure
the payment of the note given for $1000, due three years
after date. That is the trust deed the bill in this case was
filed to foreclose. Subsequently VanCleve and wife con-
veyed the premises to Albert T. Summers, and he conveyed
them to Phœbe Weygandt subject to the trust deed. On
the 27th of April, 1915, William G. Terhune and wife, for
the consideration of one dollar, executed a deed to the
premises to James A. Henson, an attorney at law, who rep-
resented Terhune. On the same day William signed and
filed for record an instrument in writing repudiating and
disaffirming all deeds and contracts relating to the premises
theretofore made by him, for the reason that at the time
they were made he was a minor under twenty-one years of
age. Again, on March 6, 1917, he made a warranty deed
for the same premises to the same grantee for the same
consideration for the purpose of confirming and ratifying
his deed of April 27, 1915, and disaffirming the deed made
to his mother in 1911. Again, on March 16 of the same
year he made a deed to the same grantee for the same prem-
ises, the purpose of which was stated to be to confirm and
ratify his deed of April 27, 1915, and disaffirm the deed
to his mother in 1911. At the time these deeds were made
by William the premises were not in the possession of the
Terhunes. The bill alleges that the deed from Mrs. Ter-

hune to her son, and the deed from him back to his mother, were without consideration. Henson answered the bill at length, setting up the reasons why he denied complainants were entitled to the relief prayed.

William G. Terhune was seventeen or eighteen years old when his mother made the deed to him and when he made the deed back to her. No consideration was paid for either conveyance, and the evidence shows the deed to the son was made to protect the property from creditors until further arrangements were made, and that the son conveyed it back to her when requested. Appellants contend that Terhune never had any title to the premises except as a mere trustee under a trust created to defraud creditors; that any creditor might have compelled him to make the conveyance, and on that ground he could not disaffirm it; also that he fraudulently and falsely represented to Van-Cleve when he was negotiating with him, as his mother's agent, for the sale of the property, that he was of age when he made the deed to his mother and that he received a valuable part of the consideration for it, which he has ever since retained, and he is now estopped to disaffirm his deed to his mother. Appellants discuss at length, and cite numerous authorities to support the proposition contended for, that a minor, where he is charged as trustee, is bound to carry out the trust the same as an adult, and, where he can be compelled to perform the trust, any deed or contract made by him which it was his legal duty to make is valid and binding on him and cannot be disaffirmed. Appellees concede that where an infant does only what the law would compel him to do, such as where he takes title under such circumstances that the law raises a constructive trust, he cannot disaffirm his performance of the trust, but they contend the trust alleged in the bill in this case was an express trust, and that even if it were in writing, which it was not, an infant may repudiate and disaffirm the trust, and any conveyance made thereunder, upon becoming of age.

In our view of the case it will not be necessary to discuss many of the questions argued in the briefs. The evidence abundantly shows William G. Terhune paid no consideration to his mother for the lot but that she conveyed it to him to protect it against creditors until she was relieved from that apprehended danger, and when that time arrived, at her request the son re-conveyed to her. Title remained in her of record until March, 1914. It is true, the son was a minor when he made the deed to his mother, in June, 1911. His mother and father were both dead at the time of the trial of this case and he did not appear to be certain of his exact age, but, as we understand the evidence, he was about seventeen or eighteen years old in June, 1911. He testified he was married on his birthday when he was twenty-one years old, and that his wedding day was March 11, 1914. He was therefore twenty-one years old when the deed was made by his mother to VanCleve, March 23, 1914. VanCleve testified Terhune told him, while they were negotiating for the sale of the premises to him, that he was twenty-one when he made the deed to his mother. He transacted all the business for his mother connected with the sale of the lot to VanCleve, who testified he did not remember that he saw her about it. He participated in the benefits of the consideration paid for the lot by the satisfaction of judgments against him to the amount of nearly $600, and VanCleve testified that there was talk that Terhune was to get a sum of money. The bill alleges these facts, and appellants contend that he could not thereafter be permitted to disaffirm his deed to his mother and convey the lot to a stranger.

It is not improper to note in this connection that all three of the deeds Terhune made to Henson,—one in April, 1915, and two in March, 1917,—expressed the consideration to be one dollar. Henson testified he paid $900 or $1000 for the property by giving Terhune credit for legal services rendered during a period of possibly a year, and

302—27

thought he had also given a check for $600, but he was unable to find any book containing his account or any check or stub of a check showing any such payment. His memory as to his knowledge of the condition of the title as disclosed by the records and the judgments against Terhune and his mother was very defective, but he was bound to know everything disclosed by the records. He testified he prepared and had served on VanCleve, Mrs. Weygandt, Mrs. Terhune and the trustee in the trust deed, notice that Terhune had conveyed the property to him and filed the same for record.

Appellees rely on *Wieland* v. *Kobick,* 110 Ill. 16, and some other decisions, that a person is not estopped by his false representations at the time of making a deed or contract from setting up infancy as a defense. That was an ejectment suit. Plaintiff had sold and conveyed the premises, the deed reciting she was unmarried and of age. She was, in fact, only seventeen years old, and after coming of age she filed a disaffirmance of her deed and demanded possession of the premises. The court held she was not estopped to disaffirm the deed; and that seems to be in harmony with the weight of authority, though the decisions are by no means unanimous. We are of opinion, however, that under the facts of this case it is not controlled by the rule in *Wieland* v. *Kobick, supra.*

*Penn* v. *Heisey,* 19 Ill. 295, is a case where a bill in chancery was filed by Heisey to enjoin the prosecution of an ejectment suit brought by Penn and his wife. The facts were, that Gideon Minor, guardian of the minor heirs of Oliver Minor, deceased,—Mrs. Penn being one of them,— regularly sold by authority of law, at guardian's sale, a certain lot belonging to the heirs of Oliver Minor but made no report of the sale and it was never confirmed, which the court held made the sale void and that no title passed to the purchaser. The proof showed the guardian charged himself with the proceeds of the sale and disbursed part of

the heirs' share for their maintenance and education, and
with the remainder of their part ($200) he purchased eighty
acres of valuable land, which the heirs sold and received
the money for.  The heirs examined the accounts of their
guardian, had knowledge of his acts and made no objections,
and the court stated the question to be, "Are not plain-
tiffs in error estopped from setting up title to this lot when
they have received and enjoyed the benefits of the proceeds
of its sale and it is now in the possession of an innocent
purchaser without notice?" and said: "The proof in this
case shows that the plaintiffs knew all the facts respecting
the sale of the lot by their guardian and the purchase and
conveyance of other lands out of the proceeds.  An equi-
table estoppel prevents a party from using a title which in
good conscience ought to inure to the use of another, and
if such a case was ever presented we think this one.  Such
estoppels are, and should be, favored in law, honor and con-
science for the truest and best of reasons; that a man hav-
ing received a benefit in one character, the value of the
thing or of the property, shall not afterwards receive the
thing or property itself in the same or another character.
This principle, so equitable and legal, runs throughout all
the transactions and contracts of civilized life.  Here the
plaintiffs in error received the proceeds of the sale of this
lot, a part in the nurture and education of the wife and a
part in eighty acres of land, which they have sold.  *  *  *
.We take it that a minor may, and ought to be, bound by
his silence if of age sufficient to know his position in regard
to his property.  He has no more right to commit a fraud
than an adult.  This principle of equitable estoppels of this
character applies to infants as well as adults; to insolvent
sureties and guardians as well as persons acting for them-
selves; and they have place as well when the proceeds arise
from a sale by authority of law as when they spring from
the act of the party.  (*Commonwealth* v. *Sherman's Admr.*
6 Pa. St. 346.)  In this case the ancestor, Oliver Minor,

died in 1833, seized of this lot. The decree for the sale of
the lot passed in 1835. Seven years after, in 1842, when
the plaintiff in error, Eliza, was nearly or quite marriage-
able, the lot was sold under an execution against the pur-
chaser of it at the guardian's sale. Eliza married in 1846.
He held and occupied it ten years and sold it to George
Strain in 1852. He occupied and sold it to the defendant
in error for the consideration of $1400 in March, 1853.
The ejectment suit is commenced in 1854 and this bill of
complaint filed the same year. It appears, then, from the
time of the sale of the lot under execution to the sale to
Strain the plaintiff in error was of an age and in a condi-
tion to know all about this property, and by her silence
must be considered as having inspired a confidence that she
was content with the nurture and education and land she
had received out of the proceeds of the sale of the lot.
Up to the purchase by the complainant she had been seven
years married, and she and her husband both knew the con-
dition of the property, the various transfers of it and of
the improvements made upon it without asserting or sug-
gesting any claim." That case was cited with approval,
quoted from at length and adhered to in *Dickson* v. *New
York Biscuit Co.* 211 Ill. 468.

"Since the estoppel of a person to declare the truth and
assert his rights based thereon, because of his contrary and
misleading acts or declarations, gives to those acts or dec-
larations a contractual force, estoppel will not ordinarily
be based on the acts or declarations of infants, but cases
may arise in which, for the prevention of fraud or unfair-
ness, a court of equity may decree such an estoppel. Upon
that principle it is well settled that no person, whether un-
der legal disability or not, will in equity be permitted to
receive and retain that which forms the consideration for
an invalid sale or disposition of his property, and at the
same time to re-take the property to the prejudice of those
who have in good faith acted upon the transaction as valid.

It has been held, even at law, that a minor may and ought to be bound by his silence if of age sufficient to know his position in regard to his property. He has no more right to commit a fraud than an adult." (14 R. C. L. sec. 16, p. 232.)

It has been laid down that as a general rule the doctrine of estoppel has no application to infants, but there are many cases recognizing an exception to this rule or denying its application in case the conduct of the infant on which the estoppel is sought to be based has been intentional and fraudulent and the infant was at the time of years of discretion. (22 Cyc. 512.) Taking William G. Terhune's own testimony, he was of age March 11, 1914, and he acted for his mother in selling and conveying the property to VanCleve on March 23, 1914. He received and appropriated part of the consideration paid for the property and afterwards conveyed it to another party who knew at least all the facts appearing of record, for a doubtful consideration, and disaffirmed the deed to his mother in 1911. To sustain his deeds to Henson as paramount to the trust deed would be to aid him in perpetrating a deliberate and intended fraud, which the court said in the *Penn case, supra,* he had no more right to commit than an adult. We do not arrive at our conclusion on the ground simply that Terhune represented he was of age when he made the deed to his mother, but on the ground that after attaining his majority he actively engaged in assisting her to sell the property and himself received the benefit of a part of the consideration paid for it. Surely a court of equity cannot be so impotent and bound by technical rules as to be required to stamp with approval a transaction so fraudulent and immoral as to shock every sense of justice and fairness.

The decree is reversed and the cause remanded, with directions to the circuit court to grant a decree as prayed.

*Reversed and remanded, with directions.*