(No. 20363.—)

MILDRED C. LARMER, Appellant, *vs.* JAMES PRICE *et al.*
Appellees.

*Opinion filed October 22, 1932—Rehearing denied Dec. 7, 1932.*

JOHN W. ELLIS, and JOHN R. HACKETT, (WILLIAM F. STRUCKMANN, of counsel,) for appellant.

HYDE, WESTBROOK, WATSON & STEPHENSON, (MARCUS R. HART, of counsel,) for appellee Fred Kaempfer.

ARTHUR H. JONES, ROBERT H. EBERLE, and HARRY H. TALCOTT, (F. W. WINKLER, of counsel,) for other appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Johanna Helena May died February 10, 1903, seized and possessed of a certain lot located at 422 Webster avenue, Chicago, Illinois, and other property. By her last will and

testament she devised in trust, for specified purposes, all of her estate remaining after the payment of debts, to Fred Kaempfer and George G. May, the latter being her only son and heir-at-law. The trustees were empowered to sell and convey all real estate for cash or on deferred payments, as they might deem best, and to give necessary deeds and conveyances. They were directed to pay to May so much of the net income as in his opinion was necessary for his maintenance and support until the indebtedness against the estate was fully paid, and after the payment of the indebtedness the entire income was to be paid to him during his natural life, in monthly or quarterly installments. Upon his death all of the trust estate was to be paid over and transferred to his issue, provided such issue are twenty-one years of age. If any were under age the trust was to continue until the youngest of such issue attained the age of twenty-one years, and then the estate was to be paid over and conveyed to such issue. If he left no child or descendants the trust estate was to be turned over to Helena J. Curtis and Alexander G. Elias. May died May 4, 1928, leaving him surviving the complainant, Mildred C. Larmer, as his only child and heir-at-law.

On January 5, 1917, the trustees conveyed the lot to John Schude. Four days after the deed was filed for record Schude conveyed the premises to May, individually. Three weeks later May made an application to have the title registered in his name under the Torrens system. Upon a hearing the examiner concluded that May was endeavoring to circumvent the trust created by the will and declined to register the title in May's name, insisting that the premises be re-conveyed to the trustees. Accordingly, on April 19, 1917, May conveyed them to himself and Kaempfer, as trustees. On March 14, 1923, they entered into a contract with James Price and Anna Price for the sale of the lot, and later filed what is called a "supplemental application" to have the title registered in their

names, as trustees, under the Torrens system. The complainant, Mildred C. Larmer, was not made a party to the proceedings either under the original or supplemental application. The registrar granted the supplemental application and issued an owner's duplicate certificate showing title in the trustees under the will of Johanna Helena May, deceased. Thereupon the trustees, in pursuance of their contract of sale, executed and delivered to James and Anna Price a warranty deed for the lot, subject to an encumbrance of $3500. The consideration for the conveyance, in addition to the assumption of the encumbrance, was $200 earnest money, $3300 in cash paid on delivery of the deed, and a note for $5000, payable in monthly installments of $100 each. This note bore interest at six per cent per annum and was secured by a trust deed on the premises. The payments, both in cash and on the note, were made to May. The co-trustee, Fred Kaempfer, never received any portion of the purchase price and made no effort to look after its application. The entire proceeds of the sale were dissipated by May and at the time of his death the trust fund was entirely exhausted. The Prices paid off the $3500 encumbrance on the lot and placed another trust deed thereon for $5000. They also encumbered it with a second trust deed for $2300.

The complainant filed a bill in chancery in the superior court of Cook county on August 9, 1928, against James and Anna Price, Kaempfer, (the co-trustee under the will of Johanna Helena May,) the trustees in the trust deeds, and all holders of outstanding notes secured by those deeds. The bill prayed that the claims of the Prices, and of the trustees and of the owners and holders of notes be decreed to be fraudulent and void as to the complainant; that the conveyance to the Prices and all subsequent trust deeds be declared void; that Kaempfer, as surviving trustee, be ordered to convey the premises to her; that an accounting be had with James and Anna Price for the rental value of

the premises from the date of the death of May and for general relief. Appropriate answers and replications were filed. The master recommended a decree in favor of the defendants, and such a decree was entered. The bill was dismissed for want of equity and the cause comes to this court on appeal.

James and Anna Price had constructive, and perhaps actual, notice of the existence and terms of the trust created by the will of Johanna Helena May. However, the evidence does not warrant the conclusion that they acted collusively and in bad faith with either of the trustees for the purpose of defeating the trust or of prejudicing the interests of any *cestui que trust*. The record shows that George G. May had a definite design to wrongfully deprive the *cestuis que trustents* of their interests for his individual benefit. The Prices were purchasers of the premises in good faith, and unless their knowledge of the existence of the trust made it necessary for them to see to a proper application of the proceeds of the sale the trustees' conveyance to them is valid. Under the common law it was incumbent on purchasers from trustees to see to the application of the purchase money, provided the instrument creating the trust required the money to be paid over immediately to a certain person or persons and in definite parts. This rule is based upon the theory that while the trustees are the holders of the legal title the *cestuis que trustents* are to be regarded as the equitable owners, and their title will not be divested until actual payment is made to them of their shares of the purchase money; but where one has become a purchaser in good faith and the instrument creating the trust does not contemplate immediate payment of the purchase money to designated persons, or where it is necessary for the trustee to make investigations before he can determine to whom the money should be paid, the purchaser is not bound to see to the application of the purchase money and is not affected by any misconduct of the trustee

after receiving the purchase money. Thus, when the time has arrived for the sale of the real estate and the persons entitled to the money are infants or unborn, then the purchaser is not bound to see to the application of the purchase money, because he might be implicated by a trust of long duration. 26 R. C. L. par. 147, p. 1294.

Because of the complexities and embarrassments which have attended the common law rule making it incumbent upon a purchaser from a trustee to see to the proper application of the purchase price a number of States have by legislative enactment abrogated the rule. The reason therefor is stated in Story's Equity Jurisprudence, (sec. 1124,) where Sir William Grant is quoted as saying that it is questionable whether the admission of the doctrine is not, in general, productive of more inconvenience than real good, for although in many instances it is of great service to the *cestui que trust,* as it preserves his property from peculation and other disasters to which, if it were left to the mere discretion of the trustee, it would necessarily be subject, yet on the other hand it creates great embarrassments to purchasers in many cases, and especially where, as in cases of infancy, the parties in interest are incapable of giving a valid assent to the receipt and application of the purchase money by the trustee. This court in *Seaverns* v. *Presbyterian Hospital,* 173 Ill. 414, said: "The tendency has been to restrict rather than to enlarge the application of the rule."

The will of Johanna Helena May did not require any immediate distribution of the purchase price. Under its terms the estate was not to be distributed until the death of George G. May, and the identity of the distributees could not be ascertained until that time. If other children had been born to him they would have been entitled to share equally with Mrs. Larmer. Her interest was contingent upon her surviving her father. Had she pre-deceased her father and left children surviving her they would have be-

come the designated distributees, or if May had died without issue, Helena J. Curtis and Alexander G. Elias, if living, would have been entitled to the estate. It is easily demonstrable that James and Anna Price could not have seen to the immediate distribution of the fund. The interest of Mrs. Larmer and of all other possible *cestuis que trustents* was contingent until the death of May. In view of this situation the purchasers were not bound to look to the application of the purchase money. *Dickson* v. *New York Biscuit Co.* 211 Ill. 468.

It is claimed that because the purchase money was paid to George G. May individually and not to both of the trustees jointly the conveyance is void. When a trust is to be administered by co-trustees they must execute the duties in their joint capacity, because they all constitute one collective trustee. But the duties which require the joint action of all trustees are those which involve the discretion and judgment of the trustees as distinguished from acts which are purely ministerial. If the duties are of the latter nature they may be performed by one. Negotiations for the sale of the premises and the execution of the deed were duties of the former class, while the receipt of the purchase price was a ministerial act. (*Colburn* v. *Grant,* 16 App. Cas. Dist. of Columbia; affirmed, 181 U. S. 606, 45 L. ed. 1021.) The re-investment of the fund after its receipt necessitates the exercise of discretion and judgment, but the simple act of receiving the money is a manual operation, which does not require the joint action of all the trustees.

James and Anna Price were *bona fide* purchasers and obtained title to the premises by a valid deed of conveyance. It was not incumbent upon them to see to the application of the purchase money by the trustees. This view of the case makes it unnecessary for us to determine the validity of the proceedings to register the title under the Torrens act.

The chancellor did not enter a money decree against Kaempfer, the co-trustee, as no affirmative relief was asked against him except to require him to execute a conveyance to the complainant.

The decree of the superior court of Cook county dismissing the bill for want of equity is affirmed.

*Decree affirmed.*