2020 IL App (2d) 190409-U
No. 2-19-0409, 0410, 0458 cons.
Order filed June 16, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| GREGORY BAIRD, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11-CH-3899 |
| | ) | |
| OGDEN LINCOLN-MERCURY, INC.; | ) | |
| OGDEN CHEVROLET, INC.; | ) | |
| MARC IOZZO, INDIVIDUALLY; and | ) | |
| MARC IOZZO, d/b/a Ogden Auto Group, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Marc Iozzo and David Fleig, Trustee of the | ) | |
| Marc. F. Iozzo Discretionary Trust, | ) | |
| Defendants-Appellants, Elicia Iozzo, Quentin | ) | |
| Iozzo, and Elizabeth Mudd-Iozzo, as Mother | ) | Honorable |
| and Legal Guardian of M.I. and J.I., Minors, | ) | Paul M. Fullerton, |
| Intervenor-Petitioners-Appellants). | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Birkett and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion when it denied the contingent beneficiaries' petition to intervene in the judgment creditor's motion to set aside a trust when the nature of the beneficiaries' interests did not confer standing to intervene. The trial court also properly granted the judgment creditor's motion to

set aside the judgment debtor's trust in that judgment debtor was a co-trustee and sole beneficiary with the sole discretion to do exactly as he pleased with the trust property for his reasonable comfort under the trust terms, thus causing the legal title and the equitable title to merge.

¶ 2    In this consolidated appeal, defendants Marc F. Iozzo (Marc) and David Fleig appeal from the trial court's order granting judgment creditor, Gregory W. Baird's, motion to set aside the Marc F. Iozzo Discretionary Trust (Discretionary Trust) to satisfy a judgment against Marc F. Iozzo personally. Petitioners Elicia Iozzo, Quentin Iozzo and Elizabeth Mudd-Iozzo, as the Mother and Legal Guardian of M.I. and J.I., minors (the Iozzo petitioners), appeal the trial court's order denying their petition to intervene in this citation to discover assets proceeding. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The facts adduced at the hearing on the motion to set aside the Discretionary Trust are as follows. The Discretionary Trust was created in 2003 by Marc's father, Fred J. Iozzo. When it was created, Marc Iozzo and his mother, Elaine Iozzo, were named co-trustees. The language regarding beneficiaries contained in Article IV of the Discretionary Trust provides as follows:

"Distribution Provisions

The Discretionary Trust shall be held as a separate trust of which the beneficiaries shall be Marc, and all descendants of Marc who shall be living from time to time during the period of such trust, and shall be administered and distributed as follows:

Section 1. Income and Principal

(a)    Support Distributions. In the event that all income and other resources known to the Trustee to be available to Marc shall be insufficient for his support in reasonable comfort [considering the standard of living to which Marc shall have been accustomed during the immediately preceding five (5) year period] and his medical care

and education (including professional education), then the Trustee is hereby authorized to distribute to Marc such amount or amounts from the net income and/or principal of such trust which the Trustee, in the sole discretion of the Trustee, deems necessary for such purposes, or to accumulate all or any part of such net income and add the same to the principal of such trust to be held, administered and distributed as a part thereof.

(b).    Emergency Distributions. The Trustee is hereby authorized, in the sole discretion of the Trustee, to distribute to any one (1) or more descendant of Marc such amount or amounts from the net income and/or principal of such trust which the Trustee, in the sole discretion of the Trustee, deems necessary to meet any unusual expenses incurred because of any illness, accident, or other unforeseen circumstances involving such descendant, or to accumulate all or any part of such net income and add the same to the principal of such trust to be held, administered and distributed as a part thereof."

¶ 5    Marc has four living children:  Elicia, age 24, Quentin, age 21, Marc, age 12 and Jocelyn, age 9. Marc owned several automobile dealerships in the Chicagoland area, which he operated as the Ogden Auto Group. In 2006, Baird agreed to loan Marc and the Ogden Auto Group $2 million. In 2009, Baird loaned an additional $4 million to Marc and the Ogden Auto Group.  Marc ultimately failed to repay the amounts he owed to Baird.  After several years of litigation, in 2016 the trial court entered a judgment in favor of Baird and against Marc in the amount of $ 8.4 million. Marc appealed and this court affirmed the trial court's judgment. *Baird v. Ogden Lincoln Mercury, Inc.*, 2016 IL App (2d) 160073-U.

¶ 6    Based upon information received from a citation to discover assets directed to Marc, Baird issued numerous subpoenas to several banks to obtain Marc's financial records.  From these

subpoenas Baird learned that Ogden Lincoln, Marc's business and principal asset, had been sold in late July 2015, a few months before Baird obtained his judgment against Marc. Baird then served a third-party citation to discover assets upon the apparent purchaser, Westmont Lincoln, LLC, d/b/a Ogden Lincoln of Westmont (Westmont Lincoln). In a deposition, Douglas Laux, the manager of Westmont Lincoln, testified that Marc continued to run and operate the Lincoln dealership. Ogden Lincoln had been located at 100 West Ogden in Westmont for over 50 years and Westmont Lincoln continued to operate from the same location.

¶ 7    In Westmont Lincoln's responses to Baird's citation to discover assets, Baird further learned that the Discretionary Trust was one of its two new owners; the Discretionary Trust held a 92.83% interest in that dealership, with Laux holding the remaining interest. Also, the title to the Westmont property was held in a land trust where the Discretionary Trust held a 100% beneficial interest. In that the co-trustees of the Discretionary Trust were Marc and his mother, Elaine Iozzo, Baird issued a third-party citation to discover assets to the Discretionary Trust.

¶ 8    In response to several bank subpoenas, Baird received voluminous bank records related to the Discretionary Trust as well as Marc personally. Those records revealed that Marc incurred hundreds of thousands of dollars in personal credit card debt which Marc paid from the Discretionary Trust's funds. The bank records also showed that Marc used the Discretionary Trust to pay the mortgage on his home. During his citation exam, Marc testified that he paid "rent" from the Discretionary Trust's funds to another Iozzo trust, the Mark F. Iozzo Children's Trust (Children's Trust), which he claimed held the title to his home.

¶ 9    The subpoenaed bank information as well as the responses from the citations to discover assets also revealed that Marc had sold his business, Ogden Lincoln, itself a judgment debtor to Baird, to Westmont Lincoln. The transfer took place on July 31, 2015.

¶ 10    On March 5, 2018, Baird filed a motion to set aside the Discretionary Trust to satisfy his judgment under the theory that the trust was a sham in that Marc, as trustee and beneficiary, had "total control of the trust assets." On August 3, 2018, the Iozzo petitioners (Marc's children) filed a petition to intervene in the proceedings. They also requested that once the trial court granted their petition to intervene that they be allowed to file a responsive pleading to Baird's motion, which was styled as a motion to dismiss which they attached to the petition. On September 26, 2018, the trial court denied leave to intervene, ruling that the Iozzo petitioners did not have a vested interest in the trust. On February 8, 2019, the Iozzo petitioners filed a motion to reconsider their petition to intervene, or, alternatively, they made a motion for a Rule 304(a) finding. On April 18, 2019, the trial court entered an order denying the Iozzo petitioners' motion to reconsider and did not rule on their alternative request for a Rule 304(a) finding.

¶ 11    On December 5 and 6, 2018, the trial court held an evidentiary hearing. At the evidentiary hearing Marc testified that he used the Discretionary Trust's bank account to pay his personal credit card charges. Those charges included, but were not limited to, payments for a vacation in Walt Disney World in January 2017; a vacation in Montego Bay, Jamaica in March 2017; a vacation to Park City Utah, in March 2017; Elizabeth Iozzo and his child's vacation to Europe in March 2017; his son's fraternity and college expenses, including a trip to study abroad in Italy and travel through Europe in January through March 2017. Finally, he confirmed that he withdrew thousands of dollars in cash for personal use, paid his wife's legal bills in an attempt to thwart the turnover of his equity in the Butterfield Country Club, and issued checks from the Discretionary Trust to pay hundreds of thousands of dollars in personal expenses, including for a $27,000 Rolex.

¶ 12    Marc acknowledged that although Elaine held the title of co-trustee for the Discretionary Trust, she never reviewed any credit card bills, all which Marc paid through his computers at home

and at his office. He transferred between $10,000 to $13,500 per month from the Discretionary Trust to pay his home mortgage. He admitted that although he had testified at the citation examination that his Children's Trust leased his home to the Discretionary Trust, he did not think that such a lease ever actually existed.

¶ 13    After the July 2015 sale of Ogden Lincoln to Westmont Lincoln, Marc transferred around $ 1.3 million in payments from the Discretionary Trust to Westmont Lincoln. As the source of these payments, Marc produced a note that he said he signed on behalf of the Discretionary Trust before July 2015, and claimed Elaine had given a $1 million loan to the Discretionary Trust. Elaine, however, testified that she was unaware of ever having agreed to make a loan in any amount to the Discretionary Trust and no loan documents were produced.

¶ 14    Marc testified that he maintained full operational control of Westmont Lincoln as operating manager, just as he had maintained control of Ogden Lincoln when he was its president. He received a salary of $500 per week as operating manager.

¶ 15    Elaine's video deposition was taken in January 2018 and provided to the trial court for its consideration at the evidentiary hearing. Elaine testified that she exercised no control over and had no knowledge of Marc's use of the assets in the Discretionary Trust for the last few years. Elaine said that she had abandoned her role as co-trustee in the last several years and that Marc had been making decisions for her as co-trustee. She was unable to clarify the number of years that Marc had been handling the decisions regarding the Discretionary Trust, but said "we've been doing this for many years." During her tenure she indicated she did not review the Discretionary Trust's bank accounts.

¶ 16    Elaine testified that she was unaware that Marc paid for his residence through the Discretionary Trust. She was also unaware of any lease or written agreement for Marc's home.

She did not know whether tax returns had ever been filed on behalf of the Discretionary Trust. She never received Marc's credit card statements and she never authorized any payments to the credit card companies. Elaine said that Marc did not need her approval prior to issuing checks. She did not recall whether Marc consulted her with respect to the funds that were invested in Westmont Lincoln from the Discretionary Trust.

¶ 17    David Fleig, Marc's college friend of 25 years, testified that in August 2017 both Marc and Elaine signed a document resigning as co-trustees of the Discretionary Trust, whereupon he was appointed successor trustee. At that time, the citation to discover the assets of the Discretionary Trust was pending. Fleig testified that he never had any discussions with Elaine about the Discretionary Trust or the substance of her role before she resigned. Marc never told Fleig why he was resigning as co-trustee. Fleig said that he had no experience serving as a trustee for any type of trust. He had no understanding of what assets were held or owned by the Discretionary Trust and he did not know how the trust made money. He only paid bills when Marc directed him to do so. Fleig signed a letter dated May 23, 2018, directing Westmont Lincoln, LLC, to direct future rent payments for the Lincoln dealership property to the Fred J. Iozzo Revocable Trust. All previous rent payments had been sent to the Discretionary Trust. Fleig did not prepare that letter and did not know who prepared it. He also did not know the source of any deposits to the Discretionary Trust's bank account.

¶ 18    William Sheridan testified that he was the attorney who drafted the Discretionary Trust for Fred Iozzo. In creating the Discretionary Trust, Fred had a number of goals concerning himself and Marc. For himself, Fred sought to incur minimum consequences from the Discretionary Trust and to ensure that the assets of the Discretionary Trust would not be included in his estate upon

his death.  He also sought to personally pay the tax on the income of the Discretionary Trust even though he would not receive that income.

¶ 19    Sheridan said that Fred had another set of goals concerning Marc.  Specifically, Fred wanted to make certain that the powers and interests that were granted to Marc in the Discretionary Trust would not cause him to incur any gift or estate tax consequences upon the exercise or non-exercise of powers.  The Discretionary Trust was also set up to provide all the beneficiaries "creditor protection" using a spend thrift provision in the Discretionary Trust.  Sheridan believed the beneficiaries to be both Marc and his descendants.

¶ 20    Sheridan testified that the Discretionary Trust was funded in 2003 when a building in Westmont that housed the automobile dealership was sold by Fred to the Discretionary Trust.  In return, the Discretionary Trust gave a promissory note to Fred's revocable trust.  Fred's probate-avoidance revocable trust was the seller in that transaction.  When asked what Sheridan meant when he referred to the term "present beneficiaries" in the trust, Sheridan said that he looked at the Discretionary Trust recently and he tried to determine who had a present interest in it versus a future interest.  In section one of article IV, subsection A and B of the Discretionary Trust, there were various standards of distribution that applied to Marc and a different set of standards that applied to distributions to Marc's descendants.  But for that difference, Sheridan said, their interests were the same.  Sheridan opined that the descendants' interests do not take place in the future.  They are not dependent upon someone's death or the happening of some unrelated event. Sheridan also noted that neither Marc nor his children may receive a distribution from the Discretionary Trust without the exercise of discretion by whomever was the trustee. Sheridan also noted that Article VIII of the Discretionary Trust contained a spendthrift clause. Sheridan had been

drafting trusts for Fred for over 15 years at the time he drafted the Discretionary Trust and he put spendthrift clauses into all the family's trusts.

¶ 21    On January 11, 2019, after hearing all the evidence, the trial court granted Baird's motion to set aside the Discretionary Trust.  Specifically, the court ruled:

> "The conclusion the Court comes to through the testimony that it heard and the evaluation of the witness that appeared before it is that Marc Iozzo is in control of the trust assets and that Marc Iozzo, at all relevant times, exercised unfettered control and access to the funds in this discretionary trust, which he used for his own benefit, basically all of his living expenses. And as sole beneficiary and trustee, Illinois law is clear that trusts can't be used to shield assets from creditors when a beneficiary has full and unrestricted access to the trust assets. So based on these reasons, the Court is granting the motion.  It is going to set aside the trust."

¶ 22    The court ordered Fleig to turn over to Baird all assets in the Discretionary Trust in an amount to satisfy the judgment and to provide an accounting of the Discretionary Trust's transactions.  It also ordered that all the Discretionary Trust's assets be frozen.

¶ 23    The Iozzo petitioners filed their notice of appeal on May 16, 2019.  Marc and Fleig filed their notices of appeal on May 17, 2019.

¶ 24                               II. ANALYSIS

¶ 25                    A. The Iozzo Petitioners' Petition to Intervene

¶ 26    Initially we address the Iozzo petitioners' argument that the trial court erred in denying their petition to intervene in the hearing on Baird's motion to set aside the Discretionary Trust because, if correct, the proper remedy would be to reverse the order denying the petition and remand the cause for further proceedings.  *Winders v. People*, 2015 IL App (1st) 140798, ¶ 22

(when a reviewing court finds that the trial court erred in denying a petition to intervene, the proper remedy is to reverse the order denying the petition and remand the cause for further proceedings).

¶ 27    Before reaching the merits of the Iozzo petitioners' claims, we first address Baird's contention that we do not have jurisdiction because the Iozzo petitioners failed to file a notice of appeal from the trial court's "final order" of September 26, 2018 denying their petition to intervene, as required by Illinois Supreme Court Rule 304(b)(4) (March 8, 2016)(governing appeals from final judgments or orders entered in citation proceedings under section 2-1402).  Orders entered in a citation to discover assets proceeding under section 2-1402 proceeding, however, are "said to be final when the citation petitioner is in a position to collect against the judgment debtor or a third party, or the citation petitioner has been ultimately foreclosed from doing so." *National Life Real Estate Holdings, LLC v. International Bank of Chicago,* 2016 IL App (1st) 151446, ¶ 10.  Here the trial court's order denying the Iozzo petitioners' leave to intervene did not put Baird, the citation petitioner, in a position to collect any assets from Marc, the judgment debtor, nor did it foreclose Baird from doing so.  Therefore, it was not a final order under Rule 304(b)(4).  In that the trial court's order denying the petition to intervene did not contain Rule 304(a) language allowing an interlocutory appeal, the Iozzo petitioners' appeal within 30 days of the trial court's order setting aside the Discretionary Trust was timely.  See Ill. S. Ct. Rule 303 (eff. Nov. 1, 2017) (a notice of appeal must be filed with the clerk of the circuit court within 30 days of the entry of the final judgment appealed from).

¶ 28    Turning to the merits, the Iozzo petitioners claim the trial court erred in denying their petition to intervene on three grounds: they were (1) necessary parties to the underlying proceedings pursuant to sections 5/405(a) and 406(a) of the Code of Civil Procedure (Code) (735 ILCS 5/405(a), 406(a) (West 2018)); (2) entitled to intervention as a matter of right pursuant to

section 2-408 of the Code (735 ILCS 5/2-408 (West 2018)); and (3) improperly denied the opportunity to assert valid defenses to the motion to set aside the Discretionary Trust. The gravamen of the Iozzo petitioners' claims is that, as descendants of Marc, they were direct, vested beneficiaries under the Discretionary Trust. In support they point to the recital of the Discretionary Trust which provides "it is the intention of the Grantor hereby to create an irrevocable trust for the benefit of the Grantor's son, Marc Iozzo (hereinafter referred to as "Marc"), *and Marc's descendants\*\*\*."*Emphasis added). Similarly they point to Article IV of the Discretionary Trust, which provides that "[t]he Discretionary Trust shall be held as a separate trust of which the beneficiaries shall be Marc *and all descendants of Marc who shall be living from time to time during the period of such trust\*\*\*.*" (Emphasis added). In further support they observe that Elicia and Quentin were already born at the time the Discretionary Trust was created, and thus their grandfather clearly intended for them to be beneficiaries of this trust. As direct beneficiaries of the trust, they argue they had the right to intervene.

¶ 29    It is well-established that a trial court's denial of a petition to intervene is generally reviewed for an abuse of discretion. *Madison Two Associates v. Pappas,* 371 Ill. App. 3d 352, 354 (2007). Section 405(a) of the Code provides:

> "Joinder of defendants. (a) Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to make a party for the complete determination or settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined."

735 ILCS 5/405(a) (West 2018).

¶ 30    Section 406(a) of the Code further provides:

"Bringing in new parties--Third-party proceedings. (a) If a complete determination

of a controversy cannot be had without the presence of other parties, the court may direct

them to be brought in. If a person, not a party, has an interest or title which the judgment

may affect, the court, on application, shall direct such person to be made a party."

735 ILCS 5/406(a) (West 2018).

¶ 31    Finally, section 2-408 of the Code provides:

"Intervention. (a) Upon timely application anyone shall be permitted as of right to

intervene in an action: (1) when a statute confers an unconditional right to intervene; or

(2) when the representation of the applicant's interest by existing parties is or may be

inadequate and the applicant will or may be bound by an order or judgment in the action;

or (3) when the applicant is so situated as to be adversely affected by a distribution or other

disposition of property in the custody or subject to the control or disposition of the court

or a court officer."

735 ILCS 5/2-408 (West 2018).

¶ 32    A party who is legally or beneficially interested in the subject matter of the litigation and

who will be affected by the decree should be made a party to that proceeding. *First National Bank

v. Screen Gems, Inc.*, 40 Ill. App. 3d 427, 431 (1976).  To have a beneficial interest sufficient to

confer standing, however, the interest of a plaintiff under a trust must be vested. *Schlosser v.

Schlosser*, 247 Ill. App. 3d 1044, 1049 (1993) (*Schlosser II*).  A party with only a conditional

interest in the trust does not have standing to petition to intervene in the proceedings.  *Id.*  An

interest is vested, rather than contingent, if it takes effect upon an event that *must* happen at some

time. *Id.* On the other hand, a condition precedent in a grant makes the interest contingent, due to the uncertainty that the event necessary for vesting will occur. *Id*. (citing H. Horner, 4 Horner Probate Practice & Estates §§ 2289.1, 2292.1, at 7, 20 (4th ed. 1990)). An interest created in a trust must be construed consistent with the settlor's intent based upon a review of the entire trust. *Schlosser II at* 1047.

¶ 33 During Marc's lifetime, the only means by which the Iozzo petitioners can receive a distribution under the Discretionary Trust is if one of the trustees determines, at his sole discretion, that Marc's descendent has had "unusual expenses," defined by Article IV, Section 1(b) of the Discretionary Trust as expenses "incurred because of any illness, accident, or other unforeseen circumstances involving such descendant." This type of interest is contingent and does not provide standing to intervene. See *Schlosser II*, 247 Ill. App. 3d at 1048 (if the language of the whole will shows that the act on which the interest depends must be performed before the interest can vest, the conditions are precedent) (citing *Maguire v. City of Macomb*, 293 Ill. 441, 448 (1920)). The only other way the Iozzo petitioners might receive a distribution is if they are alive at the time that Marc dies. Under Article V, Section 3, of the Discretionary Trust, if Marc dies and there are still assets in the trust upon his death, Discretionary Trusts will then be created in the names of the individual descendants. This type of interest is also a contingent one that does not confer standing on a party to intervene. See *Schlosser II*, 247 Ill. App. 3d at 1050 (if the settlor expressly required that the takers be alive at the time of the trustee's death, then their interests are contingent, and they have no standing to intervene).

¶ 34 Thus the trial court did not abuse its discretion when it denied the Iozzo petitioners leave to intervene pursuant to sections 405(a), 406(a) or 408 of the Code because they had no claim or interest, nor any statutory or unconditional right to intervene. See 735 ILCS 5/5-405(a), **406**(a),

5/2-408 (West 2018). In that we find the trial court correctly ruled that the Iozzo petitioners lacked standing to intervene, we do not reach their substantive arguments vis-à-vis Baird's motion to set aside the trust.

¶ 35                    B. Baird's Motion to Set Aside the Discretionary Trust

¶ 36    Marc and Fleig argue that the trial court erred when it granted Baird's motion to set aside the Discretionary Trust and attach its assets to satisfy his judgment because those assets belonged solely to the Discretionary Trust. In support they note that section 2-1403 protects trust assets from a section 2-1402 proceeding to compel the application of assets to satisfy a judgment where the trust was established in good faith, and that this determination depends upon the terms of the trust itself. 735 ILCS 5/2-1402 & 5/211403 (West 2018). They contend that a plain reading of the Discretionary Trust shows that Fred, and not Marc, was the settlor of the Discretionary Trust, and that Marc was only one of two co-trustees and only one of several beneficiaries. Under these circumstances, they assert there was no basis for Baird's motion to set aside the Discretionary Trust, and that the set-aside motion should have been denied.

¶ 37    The trial court's decision on the issues and contested facts in a supplementary proceeding is reviewed under the manifest weight of the evidence standard. *Gataric v. Colak*, 2016 IL App (1st) 151291, ¶ 28. A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Wardwell v. Union Pacific Ry. Co.*, 2017 IL 120438, ¶ 11. However, we interpret the relevant statutes and review the circuit court's construction of the trust instrument *de novo*. *Du Page County Airport Authority v. Department of Revenue*, 358 Ill. App. 3d 476, 483 (2005).

¶ 38    Recognizing the public policy and private interests underlying the creation of trusts in Illinois, Section 2-1403 of the Code provides that "[n]o court, except as otherwise provided in this

Section, shall order the satisfaction of a judgment out of any property held in trust for the judgment debtor if such trust has, in good faith, been created by, or the funds so held in trust has proceeded from, a person other than the judgment debtor." 735 ILCS 5/2-1403 (West 2018). Good faith, however, is not defined in section 2-1403, and for this we look to the law governing trusts.

¶ 39 It is well established that "[e]very trust must have a settlor, a corpus, a trustee, and a beneficiary." *Chicago Police Sergeants' Association, Police Benevolent & Protective Association, Unit 156A v. Pallohusky*, 2019 IL App (1st) 181194, ¶ 20. In addition to the basic trust elements, the trust must specify the nature and quality of each beneficiary's interest. *Id*. ¶ 21. The trustee holds the legal title to the property and the beneficiary holds the equitable title. *Campbell v. Campbell*, 2017 IL App (3d) 160619, ¶ 17 (citing Restatement (Third) of Trusts § 2 cmt. d (2003)).

¶ 40 Section 69 of the Restatement (Third) of Trusts explains that when this division of interests is not present, the trust fails. Restatement (Third) of Trusts § 69 (2003); *Pallohusky*, 2019 IL App (1st) 181894, ¶ 22. If by will or other means the entire beneficial interest in the trust property passes to the trustee, the trust terminates, and the trustee holds the property free of trust. Restatement (Third) of Trusts § 69 cmt. a (2003); *Pallohusky*, 2019 IL App (1st) 181894, ¶ 22. Stated otherwise:

> "It is essential to the creation and existence of a valid express trust that there be * * * a separation in different persons of the legal and equitable interests in the same property [citation], and, if there is no separation of legal and equitable interests of a trust— that is, if the entire legal and equitable estates come together in the same person—the doctrine of merger may apply and the trust is terminated."

76 Am. Jur. 2d Trusts § 91 (1992); *Pallohusky*, 2019 IL App (1st) 181894, ¶ 22.

¶ 41    Spendthrift trusts have long been recognized under Illinois law.  See *Wagner v. Wagner*, 244 Ill. 101, 111 (1910).  Where properly employed, spendthrift provisions restrict the beneficiary's ability to alienate the trust's assets and, concomitantly, the beneficiary's creditors' ability to attach the trust corpus.  *In re Marriage of Sharp*, 360 Ill. App. 3d 271, 281 (2006) (citing *In re Rolfe*, 34 B.R. 159, 161 (Bankr. N. D. Ill.1983)).  To the extent a trust contains a spendthrift provision, it will generally be enforced so long as, under the terms of the trust, the beneficiary does not have unregulated dominion and control over or right to distribution from the trust.  Restatement (Third) of Trusts, § 58 cmt. B (2011).

¶ 42    When construing a trust, Illinois courts apply the same rules that apply to the construction of wills.  *Harris Trust and Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991).  The first purpose in construing a trust is to discover the settlor's intent from the trust as a whole, which the court will effectuate if it is not contrary to public policy.  *Id.*  The cardinal rule of will construction is the ascertainment of a settlor's intention from the will or trust itself.  *In re Estate of Kirchwehm*, 211 Ill. App. 3d 1015, 1018 (1991); *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993).  Extrinsic evidence may be admitted to aid interpretation only if the document is ambiguous such that the settlor's intent cannot be ascertained.  *Stein,* 252 Ill. App. 3d at 615.  Since one particular will or trust is not usually identical to another, results in other cases are seldom of controlling importance in determining a testator's intent.  *In re Estate of Bozarth*, 2014 IL App (4th) 130309, ¶ 41.

¶ 43    We agree with Marc and Fleig that, in its oral ruling setting aside the Discretionary Trust, the trial court did not focus on the terms of the trust, but instead focused on Marc, as both trustee and beneficiary, having exercised unfettered discretion over the trust property such that the beneficial and legal interests had merged.  Were this the extent of the evidence presented and argued to the trial court, Marc and Fleig might have a colorable argument that the Discretionary

Trust should not have been set aside. For while a variety of bankruptcy cases have held that the merger of legal and beneficial interests in practice defeats the trust on behalf of creditors under the bankruptcy code (Matter of Rolfe, 34 B.R. 159, 161 (N.D. Ill. 1983); *In re* McCoy, 274 B.R. 751, 766 (N.D. Ill. 2002)), we have found no Illinois case so holding where the terms of the trust themselves did not merge the legal and beneficial interests. We need not reach this question today, however, because Baird also argued and our review of the Discretionary Trust terms demonstrates that the terms of the trust gave Marc total control over the trust property for his own benefit, which explains the unfettered control over the trust property observed by the trial judge. It is this merger of the legal and beneficial interest that we find supports the trial court's decision to set aside the Discretionary Trust, notwithstanding Section 2-1403.

¶ 44    In support of their argument that the Discretionary Trust was created in good faith such that it cannot be set aside under Section 2-1403, Marc and Fleig assert that: (1) Fred Iozzo and not Marc was the settlor; (2) Marc was only one of two trustees; and (3) Marc was not the sole beneficiary; and (4) the trust limited the purposes for which Marc could distribute trust property to himself. From these facts, they argue, it necessarily follows that Marc did not have unfettered control over the trust property under the terms of the Discretionary Trust and thus that the trust was created in good faith. While we agree that Marc was not the settler of the trust, his remaining contentions do not withstand scrutiny. First, as we discussed *supra,* Marc was the sole beneficiary under the Discretionary Trust; while his children were contingent beneficiaries, their interests were not vested for purposes of the instant good faith analysis. Second, and most critically, while it is correct that Marc was only one of two trustees under the Discretionary Trust when established, the terms of the trust nevertheless gave him unfettered control over the trust property at the same time he was the sole beneficiary.

¶ 45    In concluding that the Discretionary Trust was not created in good faith for purposes of Section 2-1403, we find our sister court's opinion in *Pallohusky* instructive. *Pallohusky*, 2019 IL App (1st) 181194. When Pallohusky's wife died, her will created a trust through which it devised property wherein he was the sole trustee and beneficiary. At the time the trust was created, the dispute with the judgment creditor was ongoing, but no court case had been filed. Some five years later, the creditor received a judgment of almost $700,000 against a Pallohusky, upon which he resigned as trustee in favor of his late wife's sister. *Id.*¶ 9. The judgment creditor served a third-party citation to discover assets on the Pallohusky trust and ultimately moved for turnover of the title of the judgment debtor's property held in trust in partial satisfaction of the judgment. *Id.* ¶¶ 10-12. In support the judgment creditor argued that at all relevant times the debtor served as both the trustee and sole direct beneficiary of the trust bearing the debtor's name. *Id.* ¶ 4. In opposing the judgment creditor's motion, the trust claimed that the property was protected from a turnover order pursuant to section 2-1403 of the Code (735 ILCS 5/2-1403 (West 2016) because the debtor's late wife established the trust for the benefit of the debtor and there was no evidence that she acted in bad faith in executing her will and establishing the trust. *Id.* ¶ 17. The trust also argued that the legal and equitable interest in the property had not merged since the debtor was not the sole direct beneficiary and, even if he were, he timely resigned as trustee thus avoiding merger. *Id.* The trial court granted the judgment creditor's motion for a turnover for title to the property held in the trust. *Id.* ¶¶ 10-12.

¶ 46    On appeal, the *Pallohusky* court reviewed the language of Pallohusky's late wife's will, which referred to the debtor as "*the* beneficiary" under the trust. Though the trust did refer to unnamed heirs, the court noted these heirs did not have any vested right to the trust property in that Pallohusky was in control of the trust's property and there was nothing the heirs could do to

prevent the debtor from handling the property as he wished under the trust. *Id.* ¶ 25. The reviewing court further rejected the trust's argument that the debtor had resigned in a timely manner, noting that the five-year delay was not a "prompt" resignation as understood by the doctrine allowing a trustee to resign promptly to avoid the merger of the equitable and beneficial interest of a trust. *Id*. ¶ 30 ( Restatement (Third) of Trusts § 69 cmt. d (2003)). For those reasons, the *Pallohusky* court affirmed the trial court's order granting the creditor's motion for a turnover order. *Id*. ¶ 36.

¶ 47    Marc and Fleig seek to distinguish *Pallohusky* on a variety of grounds, noting that, unlike here, the *Pallohusky* trust was created after the dispute with the debtor had arisen; the Discretionary Trust did not refer to Marc as "the beneficiary," and he was not the sole beneficiary; and that Marc's ability to distribute trust property was more limited than that of Pallohusky. As we explained *supra,* Marc was the sole beneficiary. Nor are we persuaded by Marc and Fleig's additional attempts to distinguish *Pallohusky.*

¶ 48    As the *Pallohusky* court noted, the timing of the trust's creation, or even the intent of the settlor to escape future judgments that might arise from a known dispute, were not relevant; rather, the intent that is significant is the settlor's clear desire to give the trustee and sole beneficiary complete control over the trust property. *Id.* ¶ 28. Here, the terms of the Discretionary Trust evince Fred Iozzo's intent to give Marc total discretion regarding distributions. Specifically, Article IV subsection 1(a) authorized the trustee, *in its sole discretion*, to provide for Marc's support in "reasonable comfort," considering the standard of living to which Marc shall have been accustomed to during last five years. And while one might argue that "reasonable comfort" in the context the last five-years standard of living provides some limitation on the trustee's powers, this limitation is meaningless in the context of the Discretionary Trusts terms governing the relationship between the co-trustees.

¶ 49    In their attempt to defeat the application of the merger doctrine, Marc and Fleig argue that the equitable and legal interests cannot merge in Marc because his mother Elaine Iozzo's legal interest as co-trustee stands in the way of a complete merger.  See *Burbach v. Burbach*, 217 Ill. 547, 550 (1905) (no merger where co-trustees were also co-beneficiaries); George Gleason Bogert, The Law of Trusts & Trustees, §129, at 404 (1984) ("where A and B are appointed trustees for A alone *** sustained as a valid trust").  Further, they argue that under Illinois law the remedy for trustee conduct beyond the trust terms lies in an action by the beneficiaries, not in voiding the trust. *See, e.g., McCormick v. McCormick,* 118 Ill. App. 3d, 455, 462-63 (1983) (allegations that trustee improperly paid bills are sufficient to state a cause of action for breach of trust); *Jefferson Nat. Bank of Miami Beach v. Central Nat. Bank in Chicago,* 700 F.2d 1143, 1152-53 (7th Cir. 1983) (affirming jury verdict that trustee is liable to beneficiary for the damages proximately caused by its significant breach of his trust).  While we have no quarrel with any of the above legal principles as a general matter, the powers of the instant co-trustees under the terms of the Discretionary Trust warrant a different result.

¶ 50    Under the common law when *Burbach* was decided, if there were only two co-trustees, they were required to act together when exercising discretionary trust duties. *Dingman v. Boyle*, 285 Ill. 144, 147-48 (1918) ("where there are several cotrustees, they all form, as it were, one collective trustee, therefore they must perform their duties in their joint capacity *** no such person as an acting trustee apart from his cotrustees") (citing 1 Perry on Trusts (6th Ed.) § 411); *Larmer v. Price*, 350 Ill. 401, 406 (1932) ("the duties which require the joint action of all trustees are those which involve the discretion and judgment of the trustees").  Thereby, even if one of the co-trustees was the sole beneficiary, the beneficiary/co-trustee's ability to act in its self-interest

had a necessary check in the co-trustee, which would logically prevent merger. Any such limitation on beneficiary/co-trustee Marc Iozzo is decidedly absent in the Discretionary Trust.

¶ 51    The terms of the Discretionary Trust do not in any way require Marc to consult with his co-trustee or obtain her approval for any actions he wished to take in his self-interest. Quite the contrary, Marc as co-trustee may act "in [his] sole discretion" for his "reasonable comfort." Under these circumstances, it is ludicrous to suggest that the recourse where Marc distributes income or property in violation of the trust lies in the co-trustee filing a breach of fiduciary duty action on behalf of the beneficiary: in essence, the co-trustee would be arguing that Marc breached his duty to himself by giving himself too much money.

¶ 52    In that Marc, as a co-trustee and sole beneficiary, had the sole discretion to do exactly as he pleased with the trust property for his reasonable comfort, we find he held both the legal title and the equitable title under the terms of the Discretionary Trust, causing the trust to fail. Restatement (Third) of Trusts § 69 (2003); *Pallohusky*, 2019 IL App (1st) 181894, ¶ 22.

¶ 53                                    III. CONCLUSION

¶ 54    In sum, the trial court did not abuse its discretion when it denied the Iozzo petitioners' petition to intervene in the underlying proceedings in that they were not vested beneficiaries. Further, we find that the trial court properly granted Baird's motion to set aside the Discretionary Trust, albeit for different reasons than found by the trial court: to wit, in that Marc, as a co-trustee and sole beneficiary, had the sole discretion to do exactly as he pleased with the trust property for his reasonable comfort, the trust fails because he held both the legal title and the equitable title under the terms of the Discretionary Trust. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

¶ 55    Affirmed.